Kelley vs. Town of Fond du Lac.

KELLEY vs. THE TOWN OF FOND DU LAC.

*Evidence; opinions.—Towns; liability as to defects in highways.— Contributory negligence.*

1. In an action for damages caused by a defective highway, where plaintiff, at the time of the accident, had deviated from the traveled track, and it became important to show whether such track was unsafe, it was error to permit witnesses (not experts) to state their *opinions* as to its safety. They could testify only to *facts*, from which the jury were to determine whether the track was unsafe.

| 31 | 179 |
| 75 | 645 |
| 31 | 179, |
| 77 | 545 |
| 77 | 652 |
| 31 | 179 |
| 88 | 177 |
| 31 | 179 |
| 87 | 288 |
| 31 | 179 |
| 89 | 651 |
| 31 | 179 |
| 93 | 462 |
| 31 | 179 |
| 95 | 370 |
| 31 | 179 |
| 97 | 473 |
| 97 | 525 |
| 31 | 179 |
| 113 | 6265 |
| 31 | 179 |
| 57 LRA | 467 |

2. If the opinions of plaintiff's witnesses on such a question had been properly admitted in evidence, it would have been error to reject similar testimony offered by the defendant town to show the safety of such traveled track.

3. Towns are not bound to keep highways in a suitable condition for travel in their whole width; and their liability is limited, primarily, to damages caused by defects in the traveled track.

4. If a traveller, without necessity, or for his own pleasure or convenience, deviates from the traveled track (which is in good condition), and in so doing meets with an accident from some cause outside of such track, the town will not be liable for resulting damages.

5. But if the traveled portion of the highway is obstructed or dangerous, making it necessary for a traveler to deviate therefrom, and in so doing he uses ordinary care, the town will be liable for damages accruing to him from an accident caused by any defect or obstruction in that portion of the highway over which he is thus necessarily passing.

6. The fact that a traveler saw an obstruction or other defect in a highway, and knew its dangerous character, is not conclusive proof that he was guilty of negligence in attempting to pass it. It is, in general, a question for the jury, upon the evidence, whether it was consistent with reasonable care for him to attempt to proceed.

7. If an accident, causing injury to a team, or vehicle, or person traveling therewith, results from the fact that such team is at the time in a state of fright, or not under the driver's control, the town will be liable if such condition of the team is itself caused by some defect in the highway; but not otherwise.

8. Where a team, having broken away from the vehicle to which it had been attached, and from the driver's control, and being in a state of fright, dashed against trees standing in the highway, and one of the horses was killed, if it appears, in an action for such damage, that the fright and flight of the team were caused by a defect in the highway (the plaintiff not being in fault), the question whether the presence of such trees in the highway was also a defect, is immaterial.

APPEAL from the Circuit Court for Fond du Lac County.

Action for damages arising from a defect in a highway. The plaintiff was traveling along a highway in the town of Fond du Lac, in February, 1870, with a span of horses and a double sleigh loaded with wood. When he reached a point a short distance west of a bridge, on such highway, where the grade was narrowed, he turned his team to the south and right of the graded portion, into a low place by the side of the highway.

South of the bridge was a pitch-hole, in passing through which his horses started, the bolt fastening the evener to the tongue came out, and the horses jerked the plaintiff off from the load, pulled the lines from his hands, and started on a run, and ran some sixteen or seventeen rods until they reached some trees standing eleven feet from the south line of the highway and twelve feet from the center of the graded part, where they struck the neck yoke upon a tree, breaking it and killing one of the horses. The plaintiff testified that he turned to the south because he considered the bridge and the road near it unsafe, and the track at the south, made by the general travel, safer; and that he used due care in managing the team at the time of the accident. He also adduced evidence tending to show that the bridge was unsafe to pass over; that the graded part of the highway east of the bridge was, at the time of the accident, also unsafe for loaded teams; and that the travel was at that time partly on the graded part, and partly on each side of it.

Several witnesses who had traveled the road were permitted, against defendant's objections, to answer the question whether they *considered* the grade or the side track safe at the time of the accident. One of them, who had never been engaged in bridge building as a business, but who had examined this bridge, was also permitted to give his opinion as to its safety.

The evidence for the defendant tended to show that the bridge and the grade east of it were safe for the passage of teams, but were bare of snow, it having been blown off into the ditches; and one witness testified that part of the travel in February, 1870, went on the grade, part to the north, and some to the south side. He was then asked whether there was at that time any danger of teams sliding off the grade, and several other questions of the same character, all of which were objected to by plaintiff and ruled out.

The following instructions asked by the defendant were ruled out by the court:

"If the jury find that the horse became frightened by an acci-

dent, and broke away from the plaintiff while he was driving the team, and escaped beyond all control of the plaintiff, and afterwards, while running at large, met an injury through a defect or an obstruction in the highway, then plaintiff is not entitled to recover.

" If the jury find that the highway was unsafe, and to avoid that, plaintiff turned into the ditch, and while in the ditch, his horse became frightened and ran, and plaintiff lost control over him, and had no control over him when he ran against the tree, plaintiff cannot recover."

The court then charged the jury, 1. That if the highway was out of repair, and the plaintiff used ordinary care in passing along it, and the accident occurred on account of such want of repair, plaintiff was entitled to recover. 2. That if the road was out of repair, and on that account plaintiff turned from the center or graded portion, and passed along by the side thereof, within the limits of the road, and was guilty of no negligence in so doing, and if the injury occurred while passing along by the side of such road, the plaintiff using ordinary care, then he was entitled to recover. 3. That it was a question of fact for the jury to determine, whether the plaintiff was justified, under all the circumstances, in turning from the center of the road at the place he did; and if they found that he was, and that the injury occurred while he was driving along by the side of the road, and within the limits of the highway, the plaintiff using ordinary care in so doing, then defendant was liable. 4. That if a highway is out of repair and unsafe for travelers in the middle or graded portion of it, a traveler has a right to turn out of the graded part and go along in any part of the highway within its utmost limits; and if he uses ordinary care and is guilty of no negligence in doing so, and an injury occurs to him while out of the graded part of such highway, he may recover for such injury against the town bound to keep the highway in repair. 5. That in this case, if the middle or graded portion of the road was out of repair and unsafe for a team with a load such as the

Kelley vs. Town of Fond du Lac.

plaintiff had at the time of the accident, and if a man of ordinary care and prudence, with such a load, would have turned out at the place and in the manner that the plaintiff did, and if the injury occurred while he was out of the road and within the limits of the highway, before he had passed that portion of the road out of repair, then the town was liable. 6. That if the plaintiff had passed over the road within three or four days prior to the time of the accident, with a loaded team, and, from his knowledge of the condition of the road, had good reason to believe that the middle or graded portion of it was unsafe, and believed that it was safer to turn out of the graded or traveled part where he did, than to keep in the middle of the road, and used ordinary care in driving, and was guilty of no negligence, and drove along by the side of the road no longer than it was necessary, and met with the accident while out of the road, he was entitled to recover.

Verdict for the plaintiff; judgment accordingly; from which defendant appealed.

*Coleman & Thorp,* for appellant, contended that the court erred in permitting witnesses for plaintiff to testify as to their *opinion* of the safety and sufficiency of the road and bridge, because the subject matter of the inquiry was not such as to partake of the nature of a science and require a course of previous habit or study in order to attain a knowledge of it. 1 Greenl. Ev., § 440, and note: *Carter v. Boehm,* 1 Smith's L. C., 760–793, and note; *Whitmarsh v. Angle,* 3 Am. Law Jour., N. S., 274; *Lincoln v. Bane,* 5 Cush., 590; *Robertson v. Stark,* 15 N. H., 109, 113; *Hutchinson v. Methuen,* 1 Allen, 33. Witnesses are to state facts, not opinions, in such cases. 1 C. & H. & E.'s Notes, to Phillipps' Ev. (5th ed.), 659, 662, and cases cited; *Lincoln v. R. R. Co.,* 23 Wend., 424; *Norman v. Wells,* 17 id., 136. Whether the road and bridge were reasonably safe and sufficient was a question of fact for the jury to determine, from all the evidence. *Fish v. Dodge,* 4 Denio, 311; *Gibson v. Gibson,* 9 Yerg., 329; *Dewitt v. Barley,* 9 N. Y., 371;

*Wheeler v. Framingham*, 12 Cush., 287; *Langhoff v. R. R. Co.*, 19 Wis., 489. 2. If such evidence was competent for one party ,it was competent for the other. 3. The instructions asked by defendant should have been given. To entitle the plaintiff to recover in actions like this, he must establish not only that the injury arose from the negligence of defendant, but also that he himself was in the exercise of ordinary care and diligence when the injury was received (*Dressler v. Davis*, 7 Wis., 527); and the defect in the highway must be the *sole* cause of the injury. *Davis v. Dudley*, 4 Allen, 557; *Rowell v. Lowell*, 7 Gray, 100; *Stickney v. Salem*, 3 Allen, 374; *Murdock v. Warwick*, 4 Gray, 178; *Fogg v. Nahant*, 98 Mass., 578; *Moore v. Abbot*, 32 Me., 46; *Moulton v. Sanford*, 51 id., 127. In this case the team was wholly beyond the control of the plaintiff, so that he could exercise no care over it, and the town is not liable. *Titus v. Northbridge*, 97 Mass., 258; *Horton v. Taunton*, id., 266, n.; *Richards v. Enfield*, 13 Gray, 344; *Marble v. Worcester*, 4 Gray, 395; *Keith v. Easton*, 2 Allen, 552; *Horton v. Ipswich*, 12 Cush., 488; *Babson v. Rockport*, 101 Mass., 93. 4. Towns are not obliged to keep the whole width of the highway clear and unobstructed. *Howard v. Bridgewater*, 16 Pick., 189; *Shepardson v. Colerain*, 13 Met., 55; *Smith v. Wendell*, 7 Cush., 498; *Kellogg v. Northampton*, 4 Gray, 65; *Macomber v. Taunton*, 100 Mass., 255; *Rice v. Montpelier*, 19 Vt., 470; *Prindle v. Fletcher*, 39 id., 255; *Johnson v. Whitefield*, 18 Me., 286; *Ireland v. Plankroad Co.*, 13 N. Y., 526. 5. The tree in this case was the remote and not the proximate cause of the injury. Sedgwick on Dam., 65; *Veder v. Hildrth*. 2 Wis., 427; *Vinal v. Dorchester*, 7 Gray, 421.

*Blair & Priest*, for the respondent:

1. The witnesses of whom the questions objected to were asked, showed that that they had knowledge of the condition of the road in question. One of them describes it particularly. The object of the questions was merely to show whether either of the tracks was in passable condition, and whether the plaintiff

used proper diligence in attempting to travel the road at all, or in taking the right track. The objection taken was not that the witness was not competent to give an opinion, but that an opinion was not competent to be given. 2. The questions put to the defendant's witness were too hypothetical to be admissible.

DIXON, C. J. If the court was right in receiving the opinions of the witnesses for the plaintiff as to the unsafety of the traveled tracks, then it was clearly wrong in rejecting the same kind of testimony when offered by the defendant to show their safety. Three witnesses for the plaintiff were asked by his counsel, and, against the objection of the defendant, permitted to state, whether they *considered* the tracks or road and grade safe or not, and they said they did not; and one of them was also asked his *opinion* about the safety of the bridge, to which the defendant objected but was overruled, and he replied that he did not *consider* the bridge safe. Several like questions were put to a witness on the part of the town, calculated to elicit an opinion from him that the highway was not dangerous or unsafe, but these were objected to by the plaintiff and the objection sustained, and the testimony excluded. It is obvious that the rulings of the court could not have been correct in both instances. If right in the former, then they were wrong in the latter; but we think the last correct, and that the error consisted in permitting the plaintiff's witnesses to testify to mere matters of opinion. The witnesses were not experts, nor was the subject under consideration one requiring especial skill and experience, or the aid of science, in order to be properly examined and understood, unless it might have been the question with respect to the safety of the bridge; and, as to that, the witness under examination was not a mechanic or bridge builder, and so was not qualified to express an opinion. In *Reynolds v. Shanks*, 23 Wis., 307, which was an action for mason work upon a wall, where the defense was based on the al-

leged unskillful construction of the wall, this court after some hesitation held, that a question put on the examination in chief of a witness for the defendant, not an expert, " What was the condition of the wall at the time you examined it?", was a proper question and ought to have been allowed, on the ground that it did not call for the witness's *opinion* as to the *character* of the work, but only for a statement of facts within the knowledge of the witness as to the condition of the wall. The case is clear authority for the position that the questions put and answers received here were wholly inadmissible. The witnesses could only state facts as they knew them with regard to the condition of the highway, and it was for the jury, under the instructions of the court, to draw their own inferences as to whether such condition was an unsafe and dangerous one for travelers or not. So ruled in *Ryerson v. Abington*, 102 Mass., 531. For this error a new trial must be had in the action. The other errors assigned, which relate to the charge given and the requests to charge refused, will be briefly examined, although it is the opinion of the court that none of them are well assigned.

The right of the traveler, when he finds the traveled portion of the highway obstructed, or otherwise unsafe for passage, or in such condition as to create a reasonable belief that it is so, to turn out and seek a passage on either side, when this may be done with reasonable prospect of safety, was correctly stated in the charge, all the propositions of which we believe may be affirmed as sound and unobjectionable in law. The responsibility of towns, without doubt, primarily extends only to losses or damage sustained by reason of defects in the traveled portion of the highway, for they are not bound to keep the highway in its whole width in a suitable or safe condition for travel. It is, in general, the duty of the traveler, therefore, to remain in the traveled track, or that part of the highway which, to a reasonable width, has been graded or prepared for that purpose. Hence, if, without necessity or for his own pleasure or convenience, he voluntarily deviates from the traveled track,

Kelley vs. Town of Fond du Lac.

which is in good condition, and, in so doing, meets with an accident from some cause outside of the traveled track, the town will not be responsible for any damage or injury which he may thus sustain.    This was so held in *Sykes v. Pawlet*, 43 Vt., 446. But if the traveled portion of the highway is obstructed or otherwise unsafe or dangerous, thus making it necessary for him to turn out and pass along on one side or the other of it, and he does so, using, in the language of the charge of the court below, ordinary care, and being guilty of no negligence, and an accident happens causing damages to him by reason of some obstruction or defect in the part of the highway over which he is so necessarily passing, he will be entitled to recover against the town for the injury so received.    This principle has not to our knowledge been anywhere questioned or denied.    The fact that a traveler sees an obstruction or other defect and knows its dangerous character, is not conclusive proof that he was negligent in attempting to pass it.    A person who, in the lawful use of a highway, meets with an obstacle or other cause of insufficiency, may yet proceed if it is consistent with reasonable care so to do; and this is generally a question for the jury, depending upon the nature of the obstruction or insufficiency and all the circumstances surrounding the party.    *Mahoney v. Metropolitan Railroad Company*, 104 Mass., 73; *Thomas v. Western Union Telegraph Company*, 100 Mass., 157; *Horton v. Inhabitants of Ipswich*, 12 Cush., 488; *Cuthbert v. The City of Appleton*, 24 Wis., 383.

With respect to the requests to charge which were refused, it is the opinion of this court that such refusals were proper.    The requests ignored entirely the fact, or what the jury might have found as a fact and which should have been submitted for their determination, that the escape and flight of the plaintiff's horses might have been caused solely by a defect in the highway, the pitch-hole down which the loaded sleigh was precipitated upon the heels of the horses, producing the fright and unmanageableness in which they jerked and broke loose from the sleigh and

from the control of the driver, and ran until one of them was killed by collision with the trees in the highway, distant some sixteen or seventeen rods from the place of the accident. The point is made that, because the horses had escaped and were beyond the control of the driver at the time they came in collision with the trees and one of them was killed, the town is not liable. The point is also made, supposing it to have been the duty of the town to remove the trees, and the omission to do so negligence, that the trees so left standing in the highway were the remote and not the proximate cause of the injury, which was the flight and running at large of the horses, and so the town cannot be held responsible. In the recent case of *Houfe v. The Town of Fulton*, 29 Wis., 296, this court had occasion to examine the Massachusetts and other authorities upon which counsel rely in support of the first point, and also to consider the question whether the defect in the highway must be the *sole* cause of the injury. We there stated, as the result of our examination, that the fright or uncontrollableness of the team, to constitute a defense for the town, must be such as is not produced by a defect in the highway itself, or the presence of any object within it which the town, in the exercise of reasonable care and prudence, is bound to remove, on account of its natural tendency to frighten horses and thus cause mischief and injury to travellers. We believe we were correct in this statement of the principle governing the Massachusetts decisions; but whether we were precisely so or not, we are certainly not disposed to go further in the application of it. If, without negligence or with no want of ordinary care on the part of the driver, who is a safe and competent person to have the management of a team, it becomes frightened and unmanageable or escapes from his control by reason of any defect in the highway, and, under the fright or impulse so caused or given, runs away and injures or destroys itself or the carriage or vehicle, or injures the person of the driver or other person traveling with him, in that case it is the opinion of this court that the town is liable, and must re-

Kelley vs. Town of Fond du Lac.

spond in damages for the injuries so caused and sustained.  It was expressly so adjudged with respect to an object within the limits of the highway, but outside the traveled part, which was naturally calculated to frighten horses of ordinary gentleness, in the case of *Foshay v. Glen Haven*, 25 Wis., 288, following the case of *Morse v. Richmond*, 41 Vt., 435, and authorities there cited.  If fright and injury from such a defect be actionable against the town, it is scarcely necessary to remark that fright and injury from any other defect calculated to produce them, and which does produce them, if the jury shall so find, like the pitch-hole in the present case, will also be actionable.

And as to the other point, that the trees standing in the highway were the remote cause of the injury complained of, enough has already been said to show, if they were so, that the town must still be held liable in case the jury shall find that the escape of the horses was caused by the defect in the highway at the place of such escape.  In that case, such defect in the highway is to be regarded as the proximate and continuing cause of the injury, which was all one cause or event from the time the horses took fright and escaped until one of them was killed, with no new or other independent and sufficient cause intervening to which the injury could be attributed.  In this view, the defect in the road at the place of escape, being found by the jury to have been the cause of the escape and consequent injury, is to be deemed the primary and only efficient cause, and the trees, whether negligently left standing within the limits of the highway or not, are not in any proper sense to be looked upon as a cause.  Upon this subject the case of *Hodge v. Bennington*, 43 Vt., 451, will be found in point, that the descent into the pitch-hole, the hitting of the load of wood against the heels of the horses, their fright, jerking and breaking away, and running and collision with the trees whereby one was killed, though made up of parts and embracing many incidents, are nevertheless to be

considered as essentially but one occurrence or transaction, con-
stituting a single and indivisible cause of action.

*By the Court.*— The judgment is reversed, and a *venire de
novo* awarded.