KORTENDICK, Respondent, vs. TOWN OF WATERFORD, Appellant.

*March 16—April 5, 1910.*

*Highways: Defects: Injury to horse: Notice of defect: Evidence: Sufficiency: Expert testimony: Special verdict: Instructions to jury: Immaterial errors.*

1. A finding by the jury that the defendant town had actual knowledge of a defect in a highway before the accident in question is *held* to be sustained by the evidence.
2. Expert testimony alone may be sufficient to sustain a finding by the jury that pneumonia which caused the death of a horse resulted from a severe fall on the highway.

3. Testimony of a veterinary surgeon, qualified as an expert, that pneumonia might result from an injury sustained by a horse in falling upon a highway, was competent.

4. Where a question submitted for special verdict, "Was there a defect in the highway at the time and place in question?" was made definite and precise by instructions, so that the jury could not have been misled, it was not prejudicial error to refuse to submit in lieu thereof the question, "Did the hole described in the complaint exist in the highway, at the south side of the culvert, on the 28th day·of March, 1904?"

5. Where the jury found that the defendant had actual knowledge of a defect in a highway in time to repair it, alleged errors in refusing requested instructions relative to nonliability for defects caused by the sudden action of the elements, or for latent defects, are immaterial.

6. Refusal of a requested·instruction which would be proper if the verdict were a general one, but which is not germane to any question in the special verdict, is not error.

7. Given in connection with a question in the special verdict, "Was there a defect in the highway at the time and place in question?" a charge that "by a defect in the highway is meant any condition that renders the highway not reasonably safe for travelers who exercise ordinary care in traveling upon it," was correct and was not prejudicial because not qualified by phrases referring to negligence of the town or notice of the defect.

8. A charge that by the term "accident," as used in a special verdict, was meant "the infliction of the alleged injury to plaintiff's horse at the time and place in question," though not happily worded, was not prejudicial to defendant.

9. In an action for injuries alleged to have been caused by a hole in a highway, evidence as to the existence of other holes in the immediate vicinity of the one in question was competent upon the question of notice to the town.

APPEAL from a judgment of the circuit court for Racine county: A. J. VINJE, Judge. *Affirmed.*

Action to recover damages for the death of a horse, alleged to have been caused by an injury received through stepping into a hole in a highway. The jury found (1) that the highway was defective; (2) that the plaintiff's horse was injured by reason of such defect; (3) that the defendant had notice of the defect in time to repair the same before the accident;

Kortendick v. Waterford, 142 Wis. 413.

(4) that the injury received was the proximate cause of the death of the horse; (5) that the plaintiff was not guilty of any want of ordinary care which contributed to produce the injury; (6) that plaintiff's damages were $122.50. From a judgment for plaintiff entered on this verdict the defendant appeals.

For the appellant there was a brief by *Kearney, Thompson & Myers,* and oral argument by *W. D. Thompson.*

For the respondent there was a brief by *William Sanders* and *Hand & Hand,* and oral argument by *E. B. Hand.*

BARNES, J. The following is a chronological history of this cause: Commenced in justice's court in September, 1905; verdict and judgment for plaintiff January 4, 1906, for $135 damages and $54.55 costs; appealed to the circuit court January 16, 1906; judgment of nonsuit in that court October 19, 1906; judgment reversed in this court March 10, 1908; second trial in the circuit court December 4, 1908, resulting in a verdict and judgment for plaintiff for $122.50 damages and $136.39 costs; appeal from the second judgment to this court in April, 1909; continued over the August, 1909, term by stipulation; March, 1910, case submitted to this court on briefs and oral argument at the bar. The record does not disclose whether or not the litigants or their ancestors came from Missouri. Be this as it may, a stern purpose is evinced to see that justice is administered as far as earthly tribunals are capable of dispensing it. The damages finally recovered are $12.50 less than those originally found. The costs are a mere incident anyway, and the wisdom of the fathers in providing that writs of error should never be abolished has been again vindicated. The judge of the Eleventh circuit, who resides in the extreme northwest corner of the state, presided at the last trial in the circuit court. Thus the cause was tried before a judge who was geographically farthest removed from the scene of the conflict, and who presumably

was as little liable to have any preconceived opinions or
prejudices upon the merits or demerits of the case as any one
who could be selected, unless some judge from a foreign ju-
risdiction were impressed into service. The case in itself
was simple and involved the usual controverted questions in
actions brought against towns for damages sustained by rea-
son of alleged defects in highways. Nevertheless, it is ar-
gued that the trial judge, who we may confidently assume
was entirely impartial, committed no less than nine reversi-
ble errors during the progress of a short trial.

1. It is urged that before the accident the defendant had
repaired the defect testified to by plaintiff's witnesses, and
that the fall of the horse was caused by a sudden and unfore-
seen breaking through of the crust as the horse stepped
thereon, and that therefore there is no evidence to support the
finding that the defendant had actual knowledge of the de-
fect. It appears to us that there is a sharp conflict in the
evidence on this point. Two witnesses, Fredrickson and
Smatena, located a hole at the place where plaintiff's horse
was injured. The pathmaster and the town chairman were
notified of its existence about thirty hours before the acci-
dent. The pathmaster testified that after receiving such
notice he examined the place and that the hole was a myth.
He did find a little mud puddle on top of the rock culvert
within a few feet of the alleged hole, which, according to his
evidence, was entirely innocuous, but which he did repair.
Another witness, George Best, testified that the hole was not
in existence within less than an hour before the accident.
If the evidence of plaintiff's witnesses referred to was true,
then the hole which they found had not been repaired and
had existed at least from the 25th of March to the evening
of the 28th, when the injury occurred. A fair jury ques-
tion was presented and the verdict is conclusive thereon.

2. It is next contended that the evidence is insufficient to
warrant the jury in finding that the death of the horse was

a result of the fall occasioned by its stepping into the hole. The decision on the former appeal (135 Wis. 77, 115 N. .W. 331) would seem to be *res adjudicata* on this point.    There was evidence to support the finding.    It is true it was expert testimony, but that would seem to be the only kind of evidence by which the cause of the animal's death could be established.    A court which is not composed of horse doctors cannot say that such evidence is so fantastic as to be unworthy of any credence.    The jury was as well qualified as is this court to decide whether the severe fall of the horse resulted in pneumonia.

3. The first question propounded to the jury was: "Was there a defect in the highway at the time and place in question?"    The jury was instructed that by time and place was meant the evening of March 28, 1904, and at or near the culvert which has been testified to.    The appellant asked to have the following question submitted in lieu of the foregoing: "Did the hole described in the complaint exist in the highway at the south side of the culvert on the 28th day of March, A. D. 1904?"    The question submitted in connection with the instruction given thereunder was sufficiently definite and could not mislead or befog the jury.    The evidence was more definite as to the precise location of the hole than was the complaint.

4. The fourth and fifth errors argued arise out of the failure of the court to give two instructions requested, covering the nonliability of the town for a defect caused by the sudden action of the elements unless a sufficient time elapsed thereafter for the town, in the exercise of reasonable diligence, to discover and repair it.

5. The sixth error argued arises out of the failure of the court to give a requested instruction to the jury to the effect that the town was not liable for latent defects in the highway not known to it and not discoverable by the exercise of ordinary care.    These three alleged errors may well be consid-

ered together. It may be conceded that correct propositions of law are embodied in the requested instructions. But the jury found that the town had actual knowledge of the defect in time to repair it. In view of this finding the instructions became entirely immaterial. The last instruction requested might very properly have been given if the verdict were a general one, but was not really germane to any question in the special verdict.

6. It is next urged that the court erred in charging the jury that: "By a defect in the highway is meant any condition that renders the highway not reasonably safe for travelers who exercise ordinary care in traveling upon it." This definition of a defect is criticised in two respects: (1) Because there may be numerous defects in highways which render them unsafe for travelers in the exercise of ordinary care, but which are not defects in an actionable sense; and (2) because after the words "any condition" there should have been inserted the qualifying phrase "due to the negligence of the defendant." Clearly the first objection is not well taken. The court did not tell the jury that any defect in a highway might be made the basis of a claim for damages if it caused injury. He confined his definition to defects that left the highway in a condition in which it was not *reasonably* safe. This is the true test by which the negligence of a town is to be determined, assuming that the requisite notice of the defect, actual or constructive, is established. *Kawiecka v. Superior,* 136 Wis. 613, 616, 118 N. W. 192, and cases cited. Neither is the second point well taken. The instruction was given in connection with the first question in the special verdict, which simply dealt with the defective condition of the highway, regardless of whether the town had any notice of it or was liable if a defect in fact existed. The matter of notice was dealt with in another question. The interpolation would have been improper had it aimed at anything except the matter of notice.

Inasmuch as the subject of notice was covered independently of the first question, there was no necessity for referring to it directly or remotely in that question.

7. It is further contended that the court erred in charging the jury as follows: "By the term 'accident' is meant the infliction of the alleged injury to plaintiff's horse at the time and place in question." The criticism to this language is that the word "infliction" denotes and implies actual wrong. The definition is not happily worded, but is rather too favorable to the appellant. It should not be heard to complain of this, however.

8. It is next urged that it was error to permit the witness Best to testify to the existence of other holes in the highway in the immediate vicinity of the one in which the plaintiff's horse was injured. That this testimony was competent on the question of constructive notice is decided in *Spearbracker v. Larrabee,* 64 Wis. 573, 575, 25 N. W. 555. Other cases of substantially the same tenor and effect are *Shafer v. Eau Claire,* 105 Wis. 239, 243, 81 N. W. 409; *Weisenberg v. Appleton,* 26 Wis. 56; *McHugh v. Minocqua,* 102 Wis. 291, 78 N. W. 478. The opinion in the former appeal refers to this evidence, and treats it as being competent testimony (135 Wis. 80, 115 N. W. 331).

9. Lastly, it is suggested that the court erred in refusing to strike out the testimony of the veterinary surgeon, Williams, who testified as an expert that pneumonia might result from such an injury as the plaintiff's horse sustained in falling. The subject was a proper one on which to introduce expert testimony. The witness qualified as an expert and his testimony was competent even though it might not be convincing.

*By the Court.*—Judgment affirmed.