MEIDENBAUER, Respondent, vs. TOWN OF PEWAUKEE, Appellant.

*January 13—February 1, 1916.*

*Highways: Injury from defect or insufficiency: Liability of town: Engine standing in highway: Unguarded quarry hole: Notice of defects: Contributory negligence: Shying of horse: Momentary loss of control: Proximate cause: Special verdict: Form of questions.*

1. While being driven along a highway near which and within the limits of an intersecting highway a locomotive engine had been left standing, plaintiff's horse became frightened at the engine and shied toward an unguarded quarry excavation which extended into the highway, and as a result plaintiff, his vehicle, and the horse fell into the excavation at a point where it was about seventeen feet distant from the traveled track. A question submitted in the special verdict, "Did the unguarded quarry hole within the limits of the highway cause such highway to be in a condition of insufficiency?" is *held*, though faulty, not to have been fatally defective, in view of instructions that in answering it the jury should consider whether under all the circumstances the lack of a railing or barrier rendered the highway at that place "not reasonably safe"—meaning, plainly, not reasonably safe for public travel.

2. The recital in such question of undisputed facts as to the quarry hole was not improper as invading the province of the jury; nor was the question open to the criticism that it practically told the jury that it was the duty of the town to make its highways suitable for travel over their entire width.

3. While a town is not bound to keep a highway suitable for travel throughout its entire width, a defect within the limits of the highway, though not within the traveled part thereof, may constitute an insufficiency if it is so connected with the traveled part that the road is not reasonably safe under all the circumstances; and that question in this case was one for the jury.

4. In connection with a question as to whether the town had notice of the fact that the engine was being left on the intersecting highway, it was not necessary to submit another question as to whether it had notice of such fact in time to have had the engine removed before the accident,—the jury having been fully instructed on the subject of constructive notice.

5. A question, which the jury answered in the negative, "Was the plaintiff guilty of any contributory negligence or want of ordinary care which contributed to produce and was the proximate cause of his injury?" was erroneous. It should have been, Was the plaintiff guilty of any want of ordinary care which proximately contributed to produce his injury? But, the case being barren of any evidence of contributory negligence, the error was not prejudicial.

6. A horse should not be considered as having been uncontrollable in the sense that it had escaped from management by its driver and become a runaway, where it merely shied out of the traveled track and after going a few steps, while momentarily not under control, reached an excavation into which it fell.

7. Even if, in this case, the loss of control over the horse was more than momentary, and even if the excavation was not an actionable defect in the highway, nevertheless the town is liable, since it clearly appears that the engine in the highway was an object naturally calculated to frighten horses of ordinary gentleness and constituted an actionable defect which proximately caused the injury, plaintiff's horse having been startled thereby and having dashed into the excavation before he could, in the exercise of ordinary care, restrain it.

APPEAL from a judgment of the county court of Waukesha county: DAVID W. AGNEW, Judge. *Affirmed.*

Action to recover for an injury to person and property alleged to have been proximately caused by insufficiency of a highway in the defendant town.

The Waukesha Lime & Stone Company maintained a railway track within the limits of an east and west highway, crossing the one in question, which was a north and south road. It was in the habit of leaving a locomotive engine standing at a particular point, on such track, a short distance west of the intersection of the east and west with the north and south road, after working hours until time for operations to commence on the succeeding day, and to keep such engine fired up, when reasonably required to guard against danger from freezing. The engine was so located with fire in the furnace on the occasion in question. On the opposite side of the north and south highway, some hundred feet or so, from

where the engine stood, there was a quarry excavation about twenty-one feet deep, which extended from outside the highway area into it from ten and one-half feet at the intersection of the two ways to four feet and nine inches, about fifty feet from such intersection and at the point where the accident occurred. At such point the excavation was about seventeen feet from the traveled track. The highway was three rods wide. The drop into the quarry hole was abrupt. It was wholly unguarded at the time of the accident and had been for a long time, though, formerly, it was guarded by a fence. As plaintiff was driving south, along the north and south highway, about 7:15 o'clock p. m. on the 6th day of March, 1914, and had reached the vicinity of the engine, his horse shied toward the side on which the quarry excavation encroached upon the highway; so that the wheel of his vehicle on that side went over the bank, carrying him, the horse, and the vehicle into such excavation, and causing injury to him in his person and property.

The complaint contained all the allegations requisite to make out a cause of action to recover compensation for the loss plaintiff sustained. Defendant answered, putting in issue, in the main, such allegations and pleading contributory negligence of the plaintiff.

There was evidence to establish the matters of fact before stated, and evidence tending to show that the engine, on the occasion in question, was emitting smoke and sparks; that the horse was of ordinary gentleness; that when it took fright at the sight of the engine, it instantly shied toward the excavation, momentarily became uncontrollable, and reached and went into such excavation. There was also evidence to carry the case to the jury on the question of damages.

The jury rendered a verdict as follows:

"(1) Was the horse driven by the plaintiff on the night in question an ordinarily gentle driving horse? *A.* Yes.

"(2) Did the accident occur within the limits of the public highway in question in the defendant town? *A.* Yes.

"(3) Did the unguarded quarry hole within the limits of the highway cause such highway to be in a condition of insufficiency? *A.* Yes.

"(4) Was the engine in question on the highway running east and west at a point designated by cinder pile on the night in question? *A.* Yes.

"(5) Did the defendant town, through its officers, have notice of the fact that said engine was being left on the highway at the point known as the cinder pile? *A.* Yes.

"(6) Did the plaintiff's horse become frightened at the engine in question? *A.* Yes.

"(7) Was the plaintiff guilty of any contributory negligence or want of ordinary care which contributed to produce and was the proximate cause of his injury? *A.* No.

"(8) Did the plaintiff lose control of his horse immediately preceding the accident? *A.* Yes.

"(9) If you answer 'Yes' to the eighth question, then you may answer this question: Was such loss of control permanent or merely momentary? *A.* Momentary.

"(10) Was the failure to have barriers or railings at the quarry hole in question the proximate cause of plaintiff's injury? *A.* Yes.

"(11) What damage did the plaintiff suffer by reason of the alleged injuries caused by said accident? *A.* $300."

Judgment was rendered in plaintiff's favor on such verdict.

For the appellant there was· a brief by *Muckleston & Thomas,* attorneys, and *V. H. Tichenor,* of counsel, and oral argument by *J. E. Thomas.*

For the respondent there was a brief by *Tullar, Lockney & Tullar,* and oral argument by *D. S. Tullar.*

MARSHALL, J. Was the question, "Did the unguarded hole within the limits of the highway cause such highway to be in a condition of insufficiency," fatally defective? Counsel for appellant suggests it was because the proper test of the suitableness of a highway is whether it is reasonably safe for public travel by persons in the exercise of ordinary care, and that the way the question was worded the jury may not have

gotten that idea. Furthermore, that the recitals as to the quarry hole being within the limits of the highway and its being unguarded, invaded the province of the jury.

There was no dispute as regards the location of the quarry hole, nor as to its having been, at the time of the accident, and for a long time prior thereto, wholly unguarded. Therefore there was nothing improper in reciting such undisputed facts. If there were any room for jury interference in respect to the matter, it was as to whether the unguarded hole, under the circumstances, rendered the highway not reasonably safe for travel by persons in the exercise of ordinary care. That matter was wholly left to the jury, if the words "caused the highway to be in a condition of insufficiency" in connection with the instructions, unprejudicially submitted it.

The question is far from being a good model to be followed; but there are many such situations which may exist without involving fatal infirmity. As contended by counsel for appellant, the better way is to submit such a matter to a jury by a question calling for a finding as to the sufficiency of the highway, specifying plainly what will constitute it, as, whether it was reasonably safe for travel by persons in the exercise of ordinary care. *Wheeler v. Westport,* 30 Wis. 392; *Kortendick v. Waterford,* 142 Wis. 413, 418, 125 N. W. 945. That has been said over and over again, and there is little excuse for not phrasing a question, in a case of this sort, in harmony therewith. However, the wording of the statute, sec. 1339, is that a municipality shall be liable for damages which "shall happen to any person, his team, carriage or other property by reason of the insufficiency or want of repairs" of any highway therein. The court early construed such statute in respect to what constitutes insufficiency, and the better way, in submitting such a matter to a jury, is to embody such construction in the question. A failure to do so or to give instructions in respect to the matter, might be prejudicially

fatal in case of such a question being requested and refused and the jury not being so instructed as to enable them to understand what constitutes the insufficiency of the statute. No such request was made in this case, and the jury were informed by the court's instructions as to the proper test of "insufficiency." They were told that, in determining the question, to consider whether, under all the circumstances, the lack of a railing or barrier rendered the highway where the accident occurred "not reasonably safe." That meant, plainly, not reasonably safe for public travel. They were further directed that, in case of their finding "from a preponderance of the evidence that for want of railing or barriers the highway was not sufficiently safe"—clearly referring to reasonable safety and sufficiency for public travel previously mentioned in the instructions—to answer the question accordingly. It is considered, in view of such instructions, that the question complained of was not fatally defective, though as before said, it is not a very good model to follow, even in connection with proper instructions.

It is suggested that the third question practically told the jury that it is the duty of a town to make its highways suitable for public travel for the entire width, contrary to *Rhyner v. Menasha,* 97 Wis. 523, 73 N. W. 41; *Kelley v. Fond du Lac,* 31 Wis. 179, and other cases in respect to that matter. It does not seem so. It was left to the jury to say, under all the circumstances, whether the unguarded excavation rendered the highway insufficient. Among those circumstances were the railway track on the cross road, a few feet from the excavation, and the evidence as regards the custom of leaving an engine standing near by on such track and fired up, as testified to by the witnesses. In view of the whole situation, it was a fair jury question as to whether the unguarded excavation rendered the highway insufficient within the meaning of the statute and the decisions of this court.

While it is not incumbent on a town to prepare a highway

for its whole width so as to be, in general, suitable for public travel in every portion of it; but only a part thereof sufficient in extent for the safety and convenience of travel, and its liability, primarily, is limited to damages in the traveled track,—*Hawes v. Fox Lake,* 33 Wis. 438; *James v. Portage,* 48 Wis. 677, 5 N. W. 31; *Goeltz v. Ashland,* 75 Wis. 642, 44 N. W. 770; *Hammacher v. New Berlin,* 124 Wis. 249, 102 N. W. 489,—a defect within the limits of the highway need not, necessarily, be within such part to render it insufficient for public use. It is sufficient to so render it if the defect is so connected with the traveled part that the road is not reasonably safe under all the circumstances. *Carpenter v. Rolling,* 107 Wis. 559, 83 N. W. 953; *Hebbe v. Maple Creek,* 121 Wis. 668, 99 N. W. 442. However, in absence of special circumstances, a defect so far from the traveled track as the quarry hole was, might be considered, as a matter of law, as not rendering the highway actionably defective. But there were such special circumstances in this case, proper to be considered by the jury. The surface of the road seems to have been substantially smooth up to the brink of the deep excavation, and the engine was but a short distance away, so that, in case of its startling a horse traveling alongside of such excavation, the animal would naturally swerve suddenly toward it. The jury were instructed to determine the matter in the light of the whole situation.

Error is suggested because the court submitted the fifth question, without one requested, as regards whether the officers of the town had notice of the fact that the engine was left on the highway in time to have had the same removed before the accident occurred. The jury were very fully instructed on the subject of constructive notice, so the submission of the question requested was not necessary. They were told that if it had been a common practice for weeks or months to leave the engine, as at the time of the accident, that, as a matter of law, rendered the town chargeable with notice of such practice.

The seventh question was so worded as to require appellant, in order to secure an answer in its favor on the subject of contributory negligence, to find that respondent was guilty of "contributory negligence or want of ordinary care" which not only contributed to produce, but which "proximately caused the injury." That question was certainly rather confusing and plainly erroneous. The term "contributory negligence" and the term "want of ordinary care" should not have been used so as to convey the idea that they are distinct. The term "want of ordinary care" only should have been used. The term "contributory negligence" which proximately caused "the injury" involves almost, if not quite, a contradiction. Moreover, if respondent was guilty of any want of ordinary care which proximately contributed to produce his injury, though it was not the proximate cause of it, he could not recover. The question was not aided by the instructions. On the contrary, the infirmities in it were emphasized thereby.

Notwithstanding what has been said as to the seventh question, in view of the finding that the horse was an ordinarily gentle driving horse, that respondent only lost control of it momentarily, and immediately preceding the accident, and the undisputed evidence that the horse shied immediately upon respondent observing the engine and suddenly took a few steps sideways and thus reached the excavation, in spite of respondent's efforts to prevent it, it does not seem that such question was prejudicial. The case seems to be barren of any evidence of contributory negligence.

The criticisms of the eighth and of the ninth questions do not appear to have any substantial merit. True, unless the loss of control of the horse was merely momentary, so that it did not acquire the status of a runaway horse before it reached the excavation, in one view of the case, that would be material. *Schillinger v. Verona,* 96 Wis. 456, 71 N. W. 888; *Ehleiter v. Milwaukee,* 121 Wis. 85, 98 N. W. 934. But the findings and the evidence clearly negative the idea that the horse had

acquired such status before the accident, within what was said in *Ehleiter v. Milwaukee.* It merely shied out of the traveled track and after going a few steps, momentarily not submitting to respondent's efforts to direct it, the brink of the excavation was reached. A horse is not to be considered as uncontrollable in the sense that it has escaped from management by its driver, and become a runaway, during the brief interval of shying denominated by the term "momentarily not controlled by the driver." *Titus v. Northbridge,* 97 Mass. 258. The form of the question on the subject of proximate cause is criticised because it recited the absence of barriers or a railing at the quarry hole. As we remarked in discussing the third question, such recitals merely referred to undisputed matters and therefore were proper.

While no serious complaint seems to be made because the jury found that the unguarded quarry hole was the proximate cause of the accident, it is evident that, if it were not, then the condition which caused the horse to shy was such cause, and for that, according to the verdict, the appellant was responsible. In that view, whether the horse reached the excavation while momentarily shying is immaterial. It is well settled that, if an ordinarily gentle horse is startled by an actionable defect in a highway, and before its driver can, by the exercise of ordinary care, restrain it, it dashes against some object or into a hole or ditch, thereby causing injury to the driver or his property, the municipality in which such highway is situated is liable therefor, whether such object, hole, or ditch constitutes an actionable defect in the highway or not. *Kelley v. Fond du Lac,* 31 Wis. 179; *Donohue v. Warren,* 95 Wis. 367, 70 N. W. 305; *Schillinger v. Verona,* 96 Wis. 456, 71 N. W. 888; *Seaver v. Union,* 113 Wis. 322, 334, 89 N. W. 163. The verdict of the jury made a clear case for respondent under that rule, in connection with the decision by the court that the engine, conditioned as the evidence pretty clearly showed, was an object naturally calculated to frighten horses of ordinary gentleness, which, as mat-

ter of fact, it seems was so clear that there was no prejudicial error in not submitting the matter to the jury.

It follows that, in any view we can take of the case, the judgment appealed from is right.

*By the Court.*—The judgment is affirmed.