[Crim. No. 1758. Second Appellate District, Division One.—February 26, 1929.]

THE PEOPLE, Respondent, v. MALCOLM LOVELACE, Appellant.

Frederic H. Vercoe, Public Defender, and Franklin Padan, Chief Deputy Public Defender, for Appellant.

U. S. Webb, Attorney-General, and Alberta Belford for Respondent.

HOUSER, J.—Defendant pleaded guilty to the crime of involuntary manslaughter. Although defendant was granted leave to file an application for probation, the trial court refused to consider it and denied probation to defendant on the sole ground that under the provisions of section 1203 of the Penal Code the trial court had no power or authority to grant probation to "one who in the perpetration of the crime inflicted great bodily injury." The appeal is from the judgment; and the ultimate point raised by appellant is that the alleged error of the trial court in refusing to consider the application of defendant for probation on the ground specified was prejudicial to his substantial rights in the premises. (*People* v. *Jones,* 87 Cal. App. 482 [262 Pac. 361].)

That part of section 1203 of the Penal Code, upon which reliance was placed by the trial court and which is here urged as authority to sustain its refusal to consider the application of defendant for probation, is as follows: "Probation shall not be granted to any defendant who at the time of the perpetration of the crime or at the time of his arrest was armed with a deadly weapon (unless at the time he had a lawful right to carry the same), nor to one who used or attempted to use a deadly weapon in connection with the perpetration of the crime, *nor to one who in the perpetration of the crime inflicted great bodily injury or torture,* . . . "

So far as is here concerned, the words of the statute which require construction are "perpetration" and "inflicted." It is apparent that if such words are to be taken in the sense that the first signifies the simple *commission* of an act which by the statute constitutes a crime, and that the second merely means that by reason of such act "great bodily injury" *resulted*, no criminal act (either *malum in se* or *malum prohibitum*, however insignificant the latter, or however lacking in either actual or presumed criminal intent on the part of the guilty person), which, even as against the express or implied will, or the manifest *contrary conduct*, of such person at the time of the commission thereof, results in "great bodily injury" to any person whomsoever—may be the subject upon which that portion of the probation law here under consideration, as expressed in section 1203 of the Penal Code, may lawfully operate.

A familiar rule of construction of statutes is that unless it appear that words therein have been used in a particular sense, they should be given an interpretation which will accord with the usual, natural, or ordinary meaning attributed to them. Moreover, section 4 of the Penal Code contains the provision that all the statutory provisions of the Penal Code "are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice." But aside from what may be the generally accepted significance of the particular words in question, it may be noted that the dictionary definition of the word "perpetrate" includes the thought that it is used "commonly in a bad sense; as to perpetrate a crime" (Webster's New International Dictionary); or, as stated in Funk and Wagnall's New Standard Dictionary, the word is "now used *only in a bad sense;* to be guilty of; commit as a wicked deed"; from which it would appear that in the "perpetration of the crime," as designated by section 1203 of the Penal Code, the guilty person necessarily must have acted consciously or with a guilty intent to "commit (the act) as a wicked deed," or with gross carelessness or recklessness. Such also is the common or ordinary acceptation of the word "perpetrate." No one would think of using it in connection with the doing of a kindly, a gracious, or a just act. A man may *perpetrate* a fraud upon another; but it would seem incongruous that in a suit in equity to redress the

wrong a judge would "*perpetrate*" a just judgment. If on a crowded street or sidewalk two boys should be tossing a baseball one to the other, or engaged in what is commonly known as "playing catch," and if while so engaged one of the boys should make a "bad throw" and the other fail to catch the ball, with the result that the ball should come in contact with the head of an infant in the arms of its mother with such force as to kill the child, although by reason of the failure on the part of the boys "to use due care and circumspection" (sec. 192, Pen. Code), they might be charged with the offense of manslaughter—would it be a correct use of English to speak of the incident as the "*perpetration*" of a crime; or to say that "great bodily injury had been *inflicted*"? Illustrations might be multiplied by which it might be shown that from pure accident or from a lack of "due care and circumspection" the crime of manslaughter might be "perpetrated," by reason of which "great bodily injury" might be "inflicted"; but in the "perpetration" of which no actual intent would be present to commit either manslaughter or any other crime.

Although possibly by neither the popular nor the dictionary definition of the word "inflicted" does it necessarily follow that the meaning to be conveyed is that an actual intent must be in operation to impose a blow of any sort, or to cause distress or suffering, nevertheless in Webster's New International Dictionary one of the meanings ascribed to the word is "to impose, as a penalty or punishment." On consideration of the history of the probation law in question (sec. 1203, Pen. Code), it will be found that the original probationary benefits ordinarily available to one who committed a crime were denied in cases only of "murder, robbery, burglary, or rape by force and violence"; and that the language by which the denial of the right of probation in such cases was indicated was strikingly similar to that employed in the present statute—the language in the original statute refusing probation being "where, in the *perpetration* of any such crimes, great bodily injury or torture is *inflicted*." It is obvious that in committing the crime of murder, as distinguished from other crimes where homicide results, "great bodily injury . . . is inflicted" "with *malice* (or intent) aforethought." (Section 187, Pen. Code.) It is common knowledge that in the commission of either robbery,

burglary, or rape, for a failure on the part of the victim of such crime to comply instantly with the demands of the perpetrator thereof, "great bodily injury" is likely to be administered as a penalty or punishment; which act manifestly is wilful and intentional on the part of the guilty person and readily suggests the reason for the denial of probation in such a case. The infliction of the "penalty or punishment" upon the victim by the perpetrator of either of such crimes cannot be attributed to chance, accident, or misfortune, but legally must be imputed to deliberate design or intent. So far as relates to the question here under consideration, as between the statute as originally enacted and as it now appears, in substance, literally the only difference is that formerly it applied to certain *specified* crimes of violence only, whereas in the present statute its provisions apply to "*any*" crime; from which fact the inference may be deduced that in the enactment of the new statute the identical considerations were present in the minds of the legislators which were so apparent and outstanding in the original statute there appearing as a basic reason for denial to the violator of the law of even the possible benefits of the statutory provisions relating to probation. The purpose of that portion of the probation law as it now exists and here under consideration is obvious; that is, to preclude or prevent the exercise of probationary discretion in cases involving *wilful* and *intentional* wrong, and to expand the former statute so as to now include therein offenses which, in the wicked "perpetration" thereof "great bodily injury" is intentionally "inflicted." A consultation of the index of felonies appearing in the Penal Code discloses the fact that, in addition to those specified in the statute as originally enacted, to wit, "murder, robbery, burglary, or rape by force and violence," there are at least thirty other crimes in the "perpetration" of which "great bodily injury" is likely to be "inflicted." Moreover, in the "perpetration" of each of such additional crimes, malice or an implied or specific intent to commit it is necessarily present. The mention of some of them will illustrate the point: Abduction; arson; malicious burning of property; assault with a deadly weapon; assault with caustic chemicals; enticing away child; administering stupefying drugs; false imprisonment; extortion; kidnaping; mayhem; administering poison with intent to

kill; engaging in or aiding prizefights. On the other hand, in the "perpetration" of crimes amounting to *felonies* arising from the operation of motor vehicles and in which "great bodily injury" is likely to be "inflicted" the actual resulting injury is, almost, if not quite, universally of an accidental nature, and without any direct intent that it shall happen. Section 141 of the California Vehicle Act (Stats. 1923, p. 517), provides in substance that:

"The driver of any vehicle which strikes any person or collides with another vehicle shall immediately stop and give his name and address and the names and addresses of all passengers not exceeding five in his vehicle, also the registration number of his vehicle, to the person struck or the occupants of the vehicle collided with, and shall also render to such persons all necessary assistance, including the carrying of such persons to a physician or surgeon for medical or surgical treatment, if such treatment is required, or if such carrying is requested by the person struck or any occupant of such vehicle collided with. Any person violating any of the provisions of this section is punishable by imprisonment in the state prison not exceeding five years or in the county jail not exceeding one year, . . . "

It is undeniable that daily within this state dozens of automobile accidents occur in which "great bodily injury" is "inflicted." Can it be true that in the enactment of the statute in question it was the intention of the legislature to include within its purview all misdemeanors or felonies which are thus "perpetrated"? We think not.

In the case of *The Queen* v. *Clarence*, 22 Q. B. Div. 23, it was held (by illustration) that if a man by a grasp of the hand should infect another with smallpox it would be "an unnatural use of language to say that a man by such an act 'inflicted' smallpox upon the other." It was also held in the same case that knowingly suffering from a venereal disease and yet having connection with and imparting the disease to one of the opposite sex who is ignorant that the embracer is so suffering is not to "inflict grievous bodily harm," as coming within the purview of the statute prohibiting the same. The point in the case, as expressed in one of the opinions therein, is that in the *infliction* of anything by one person upon another the element of *intent* must be present. And so in *Jefferson Standard L. I. Co.* v. *Myers* (Tex. 1926),

284 S. W. 216, where the authorities are cited, in principle it is ruled that an insane person is incapable of *inflicting* an injury; that the word involves *an exercise of the will; something done voluntarily;* and necessarily implies *intention.* To the same effect is *Accident Ins. Co.* v. *Crandal,* 120 U. S. 527 [30 L. Ed. 740, 7 Sup. Ct. Rep. 685, see, also,. Rose's U. S. Notes], and *Kortendick* v. *Town of Waterford* (1910), 142 Wis. 413 [125 N. W. 945], where, among other things, the court said: "The criticism to this language is that the word 'infliction' denotes and implies *actual wrong.*"

For the purpose of considering the eligibility of the defendant in the instant case to probation, it will be remembered that he pleaded guilty to the crime of *involuntary* manslaughter. By section 192 of the Penal Code manslaughter is defined as "the unlawful killing of a human being, *without malice, . . .* without due caution and circumspection"; and section 188 of the Penal Code declares that "malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow-creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned ' and malignant heart."

In *People* v. *Kelley,* 24 Cal. App. 54 [140 Pac. 302], among other things, it is said: "Involuntary manslaughter, *as the phrase necessarily imports* and as our code defines that crime, is the taking of life in certain unlawful ways without any intention of doing so." And the same ruling is inferable from each of the following cases: *People* v. *Sidwell,* 29 Cal. App. 12, 18, 19 [154 Pac. 290]; *People* v. *Searle,* 33 Cal. App. 228, 231 [164 Pac. 819]; *People* v. *Pearne,* 118 Cal. 154, 157 [50 Pac. 376]. It may, therefore, be considered as established by judicial decision, as well as by statute, that in cases of involuntary manslaughter (especially where, as here, the crime was committed "without due care and circumspection") no intention to commit the act *may be even imputed* to the guilty person—from which, in the instant matter as presented to the trial court, it is manifest that the fact that in the commission (or "perpetration") by defendant of the crime of involuntary manslaughter, "great bodily injury" was suffered by the victim does not in and of itself warrant or admit of a legal or other pre-

sumption or conclusion that the killing was intentional or wilful. ■ It follows that within the meaning of the statute in question one who in the perpetration of a crime inflicts great bodily injury must do so wilfully and intentionally (expressly or impliedly) before the substantial rights relating to probation, to which, under the terms of the statute, he is entitled, will be denied him.

The judgment is reversed, with directions to the trial court to re-arraign defendant for judgment, and thereupon and in accordance with law to hear and determine on its merits the application of defendant for probation, and thereafter to proceed in the premises as it may be advised.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 11, 1929, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 28, 1929.

All the Justices present concurred.