*1688
 
 Opinion
 

 BAMATTRE-MANOUKIAN, J.
 

 Penal Code section 667 authorizes imposition of an additional five-year prison term on “any person convicted of a serious felony” for each separate prior conviction of “a serious felony in this state” the person has suffered. Section 667 defines “serious felony” by reference to subdivision (c) of Penal Code section 1192.7.
 

 We revisit these provisions in a case in which the People have undertaken to apply them to the crimes of gross vehicular manslaughter defined in Penal Code section 191.5 and in subdivision (c)(1) of Penal Code section 192. We shall conclude:
 

 (1) That by virtue of subdivision (c)(8) of Penal Code section 1192.7, either gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5) or gross vehicular manslaughter other than while intoxicated (Pen. Code, § 192, subd. (c)(1)) will be a serious felony if in the commission of the crime the defendant personally inflicts great bodily injury on any person other than an accomplice;
 

 (2) That subdivision (c)(8) of Penal Code section 1192.7 does not require that the defendant have specifically intended to inflict the injury;
 

 (3) That a prior conviction of a felony in the commission of which the defendant personally inflicted such an injury may be taken into account as a serious felony, in enhancement of sentence under Penal Code section 667, even though infliction of the injury was neither explicitly charged nor explicitly found in the prior proceeding; and
 

 (4) That relevant portions of a properly authenticated preliminary examination transcript in the prior proceedings will be admissible, over hearsay, confrontation, and due process objections, to prove that in the commission of the prior felony the defendant personally inflicted such an injury.
 

 We shall affirm two five-year serious-felony enhancements imposed on defendant and appellant Ralph Gonzales.
 

 In 1985 Gonzales pled guilty, in Kern County, to gross vehicular manslaughter other than while intoxicated. (Pen. Code, § 192, subd. (c)(1).) There was no separate allegation that, and no separate finding whether, in the commission of the felony Gonzales had personally inflicted great bodily injury on any person other than an accomplice. Although the Kern County minutes recite that the superior court found a “factual basis” for Gonzales’s
 
 *1689
 
 guilty plea, the factual basis is not otherwise identified or described. A preliminary examination transcript in the Kern County proceedings reflects that the victim died several days after his vehicle was struck broadside in an intersection by a second vehicle which entered the intersection against a red light and at a very high speed. The driver of the second vehicle left the scene on foot. Gonzales was not positively identified at the scene but was linked to the second vehicle, and to the accident, by circumstantial evidence and was arrested approximately six hours later in another town a short distance away.
 

 In July 1991, in Santa Clara County, Gonzales drove a vehicle into an oncoming traffic lane and struck another vehicle head on, killing the young woman who was driving the other car and injuring several other people; it is undisputed that the decedent’s sister suffered great bodily injury. On the basis of this incident Gonzales was charged with gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5), driving under the influence of an alcoholic beverage or drug and causing bodily injury to the decedent (Veh. Code, § 23153, subd. (a)), and driving while having 0.08 percent or more of alcohol in his blood and causing bodily injury to the decedent
 
 (id.
 
 subd. (b)), with multiple enhancement allegations; he was also accused of a subsequent escape from jail (Pen. Code, § 4532, subd. (b)).
 

 Gonzales immediately pled guilty to the four felonies and admitted all enhancement allegations
 
 except
 
 a total of six allegations in two categories:
 

 (1) That he had personally inflicted great bodily injury, within the meaning of Penal Code sections 667 and 1192.7, on
 

 (a) The decedent, and
 

 (b) The decedent’s sister; and
 

 (2) That he had suffered three prior felony convictions as set forth in four enhancement allegations:
 

 (a) That he had been convicted in Kern County of “a serious felony, to wit: Gross Vehicular Manslaughter in Which the Defendant Personally Inflicted great bodily injury on another person, on charges brought and tried separately, within the meaning of sections 667 and 1192.7 of the Penal Code.”
 

 (b) That he had served a separate prison term, within the meaning of subdivision (b) of Penal Code section 667.5, for the Kern County conviction.
 

 (c) That he had been convicted in Santa Clara County of a serious felony, robbery, within the meaning of Penal Code sections 667 and 1192.7.
 

 
 *1690
 
 (d) That he had served a separate prison term, within the meaning of subdivision (b) of Penal Code section 667.5, for a Santa Clara County conviction of burglary.
 

 A jury found each of the six enhancement allegations to be true. On these verdicts the trial court concluded that both the currently charged felonies and the prior convictions for gross vehicular manslaughter and for robbery had been serious felonies. The court added two unstayed five-year enhancements, one based on each of the separate prior serious-felony convictions, to Gonzales’s prison sentence.
 

 On appeal Gonzales first asserts that gross vehicular manslaughter cannot be a serious felony within the meaning of Penal Code section 1192.7 properly construed, and, in the alternative, that the trial court erred by refusing to instruct the jury that personal infliction of great bodily injury in the commission of a felony will bring the felony within subdivision (c)(8) of section 1192.7 only if the defendant specifically intended the injury. Either assertion, if validated, would vitiate the trial court’s conclusions that the current offenses (as well as the prior gross vehicular manslaughter) were serious felonies and would thus require that both five-year enhancements be vacated.
 

 Alternatively Gonzales argues that the finding that the prior gross vehicular manslaughter, in Kern County, was a serious felony must be set aside, both because the question whether he had personally inflicted great bodily injury had not been adjudicated in the Kern County proceeding and because the preliminary examination transcript on which the People relied, in these proceedings, to establish personal infliction of great bodily injury in the 1985 Kern County collision was inadmissible in evidence. Gonzales does not question the conclusions the jury and the trial court reached as to the prior conviction for robbery; a determination that the Kern County prior conviction could not be deemed a serious felony would require, in and of itself, only that the five-year enhancement attributable to that prior conviction be vacated.
 

 We shall reject all of Gonzales’s arguments and shall affirm the judgment as rendered.
 

 1.
 
 Can Gross Vehicular Manslaughter Be a Serious
 
 Felony?
 

 Subdivision (c) of Penal Code section 1192.7, initially enacted by the electorate in 1982 as part of Proposition 8, identifies several serious felonies by name. Gross vehicular manslaughter is not one of the named
 
 *1691
 
 felonies; subdivision (c) names only two forms of homicide: murder and voluntary manslaughter. (Pen. Code, § 1192.7, subd. (c)(1).)
 

 Subdivision (c) of Penal Code section 1192.7 also describes several categories of felonies which are to be deemed serious felonies. One such category is unambiguously described in subdivision (c)(8) as “any other felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice . . . .”
 

 The trial court agreed with the People that gross vehicular manslaughter could be a serious felony under subdivision (c)(8) of Penal Code section 1192.7.
 

 Gonzales argues that because the electorate explicitly identified only two of the several forms of homicide, it must be understood to have intended to exclude those forms of homicide—such as gross vehicular manslaughter—it did not explicitly identify. Gonzales adds that this construction is supported by the perception that gross vehicular manslaughter connotes less culpability—that, in pertinent terms, it is less serious—than either murder or voluntary manslaughter.
 

 Gonzales’s argument relies on, and essentially tracks, the analysis in
 
 People
 
 v.
 
 Cook
 
 (1984) 158 Cal.App.3d 948 [205 Cal.Rptr. 105], in which the Court of Appeal concluded that involuntary manslaughter is
 
 not
 
 a serious felony.
 

 In
 
 Cook
 
 the Court of Appeal applied the maxim of statutory construction that “expression of one thing implies the exclusion of another”
 
 {People
 
 v.
 
 Cook, supra,
 
 158 Cal.App.3d at p. 952) to conclude, in light of Penal Code section 1192.7, subdivision (c)’s enumeration of murder and voluntary manslaughter, that omission of involuntary manslaughter “must have been intentional. [SO If, as the People argue, involuntary manslaughter was omitted because it was included within . . . subdivision (c)(8), ‘any other felony in which the defendant inflicts great bodily injury on any person, . . .’ then the express listing of murder and voluntary manslaughter was unnecessary, as those two offenses would be included as well in subdivision (c)(8).” (158 Cal.App.3d at p. 953.) “[I]f any felony which resulted in the infliction of great bodily injury could be used to enhance under section 667,” the Court of Appeal suggested, then “the language of section 667, subdivision (d), that ‘As used in this section “serious felony” means a serious felony listed in subdivision (c) of Section 1192.7’ would be rendered meaningless insofar as it includes subdivision (c)(1), i.e., ‘(1) murder or voluntary manslaughter,’ which always result in the infliction of great bodily injury.” (158 Cal.App.3d at p. 954.)
 

 
 *1692
 
 The Court of Appeal pointed out that Penal Code section 12022.7, which authorizes a sentencing enhancement for intentional infliction of great bodily injury in the commission of a felony, expressly makes the enhancement inapplicable to murder or manslaughter; the Court of Appeal reasoned that “[t]o hold that under sections 667 and 1192.7, subdivision (c), a five-year enhancement may be imposed for involuntary manslaughter would be inconsistent with this statutory scheme.”
 
 (People
 
 v.
 
 Cook, supra,
 
 158 Cal.App.3d at p. 954.) The Court of Appeal added that “[t]he omission of involuntary manslaughter [from section 1192.7] comports with the culpability distinction between these crimes—a distinction involving
 
 mens
 
 rea—a guilty mind; a guilty or wrongful purpose. Murder requires malice and intent; voluntary manslaughter requires intent. Involuntary manslaughter requires neither.” (158 Cal.App.3d at p. 955, fn. omitted.)
 

 We respectfully suggest that
 
 Cook’s
 
 analysis has been effectively superseded as authority by the Supreme Court’s opinion in
 
 People
 
 v.
 
 Equarte
 
 (1986) 42 Cal.3d 456 [229 Cal.Rptr. 116, 722 P.2d 890] and by the Second District’s subsequent opinion in
 
 People
 
 v.
 
 Brown
 
 (1988) 201 Cal.App.3d 1296 [247 Cal.Rptr. 683],
 

 In
 
 Equarte
 
 the pertinent issue was whether assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)), which is not listed in Penal Code section 1192.7, subdivision (c), could nevertheless constitute a serious felony, under subdivision (c)(23), if the defendant personally used a dangerous or deadly weapon in the commission of the offense. The Supreme Court concluded that in such circumstances assault with a deadly weapon
 
 could
 
 constitute a serious felony.
 

 In part pertinent to the issues here,
 
 Equarte
 
 endorsed a Court of Appeal’s reading of the Supreme Court’s earlier opinion in
 
 People
 
 v.
 
 Jackson
 
 (1985) 37 Cal.3d 826, 832 [210 Cal.Rptr. 623, 694 P.2d 736], also decided after Cook:
 
 Jackson
 
 “ ‘reasoned the inclusion of. . . items [describing nonviolent criminal conduct which do not precisely correspond to the elements of any preexisting criminal offense] evidenced the voter’s intention to deter certain criminal conduct regardless of whether it refers to specific criminal offenses because it is perceived as dangerous and deserving of additional punishment when committed by recidivists. It therefore concluded the enhancement provisions enacted by Proposition 8 refer to the criminal
 
 conduct
 
 described therein,
 
 not
 
 to specific criminal
 
 offenses
 
 and thus these provisions apply whenever the prosecution pleads and proves the specified conduct.’ ”
 
 (People
 
 v.
 
 Equarte, supra,
 
 42 Cal.3d at pp. 463-464, quoting from
 
 People
 
 v.
 
 Arwood
 
 (1985) 165 Cal.App.3d 167, 175 [211 Cal.Rptr. 307].) In the Supreme Court’s view it followed that “[b]y incorporating section 1192.7,
 
 *1693
 
 subdivision (c)(23) into section 667, the drafters evidenced their conclusion that a defendant who ‘personally uses a dangerous or deadly weapon’ in the commission of a felony should be classified as a ‘serious’ felon and should be subject to an additional five-year enhancement if he has previously been convicted of a serious felony.”
 
 (People
 
 v.
 
 Equarte, supra,
 
 42 Cal.3d at p. 464. )
 

 Subdivision (c) of Penal Code section 1192.7 explicitly designates “assault with a deadly weapon or instrument on a peace officer” (Pen. Code, § 1192.7, subd. (c)(ll)) and “assault with a deadly weapon by an inmate”
 
 (id.
 
 subd. (c)(13)) as serious felonies. Equarte argued (as Cook did and Gonzales does with respect to the enumeration of “murder” and “voluntary rtianslaughter” in subdivision (c)(1)) that a construction which would permit a basic assault with a deadly weapon to be classified as a serious felony, solely on the basis of the defendant’s personal use of a weapon, would render the express designations of two aggravated assaults with a deadly weapon superfluous. The Supreme Court responded in terms which would be applicable to subdivision (c)(8) of Penal Code section 1192.7 as well: “In the first place, this contention overlooks the fact that subdivision (c)(23) applies only to defendants who
 
 personally
 
 use a deadly weapon in the course of their offense; defendants can be found to have committed a serious felony under the aggravated assault categories if they are simply accomplices in the aggravated assault and so those categories include persons who would not fall under subdivision (c)(23). More fundamentally, this contention is premised on the erroneous assumption that section 1192.7, subdivision (c) was carefully drafted so that each of its 25 categories would be mutually exclusive and there would be no overlapping of subdivisions. From the face of the statute, however, it is clear that the categories were not devised with that precision. Rather, it appears that the categories were intended to be cumulative, and that in the case of the categories—like subdivision (c)(23)—that apply to ‘any felony’ if committed in a particular manner, a defendant’s conduct may place him into the ‘serious felony’ classification under a number of different categories.”
 
 (People
 
 v.
 
 Equarte, supra,
 
 42 Cal.3d at p. 465, fn. omitted.)
 

 Equarte
 
 did not mention
 
 Cook,
 
 which appears heretofore to have been cited only in
 
 Brown.
 

 In
 
 Brown
 
 the issue was, once again, whether involuntary manslaughter could be a serious felony. Undertaking to distinguish
 
 Cook
 
 on various grounds, the Court of Appeal concluded “as a matter of first impression,” citing Penal Code section 1192.7, subdivision (c)(8), “that involuntary manslaughter may constitute a serious felony within the meaning of section 667
 
 *1694
 
 if the record establishes that the defendant ‘personally inflict[ed] great bodily injury’ in the commission of the crime.”
 
 (People
 
 v.
 
 Brown, supra,
 
 201 Cal.App.3d at p. 1298.) The Court of Appeal deemed
 
 Equarte
 
 “dispositive”
 
 (id.
 
 at p. 1300) and adopted much of its analysis, concluding among other things that “the fact that. . . subdivision (c). . . does not specify involuntary manslaughter as a serious felony is of no consequence if the circumstances of the crime otherwise bring it within one of the listed categories”
 
 (id.
 
 at p. 1302, fn. omitted) and that in
 
 Equarte
 
 the Supreme Court had “rejected” use of the maxim “ ‘expression of one thing implies the exclusion of another’ ” (on which
 
 Cook
 
 had relied in part) in interpreting subdivision (c).
 
 (Id.
 
 at p. 1303.)
 

 We are satisfied that Equarte's precedent is authoritative (cf.
 
 Auto Equity Sales, Inc.
 
 v.
 
 Superior Court
 
 (1962) 57 Cal.2d 450, 455-456 [20 Cal.Rptr. 321, 369 P.2d 937]), that Brown’s analysis is consistent with Equarte's, and that the issue Gonzales tenders is indistinguishable from that which
 
 Brown
 
 resolved against the defendant in that case. Thus we conclude that by virtue of subdivision (c)(8) of Penal Code section 1192.7, either gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5) or gross vehicular manslaughter other than while intoxicated (Pen. Code, § 192, subd. (c)(1)) will be a serious felony if in the commission of the crime the defendant personally inflicts great bodily injury on any person other than an accomplice. (Cf. also
 
 People
 
 v.
 
 Bow
 
 (1993) 13 Cal.App.4th 1551, 1557-1558 [17 Cal.Rptr.2d 94].)
 

 Gonzales expresses concern that the conclusion we reach would make gross vehicular manslaughter ipso facto a serious felony “because there could never be a vehicular manslaughter without personally inflicting serious bodily injury.” This, according to Gonzales, would inappropriately disregard the perceived function of statutory enhancement provisions, which “typically focus on an element of the commission of the crime or the criminal history of the defendant which is not present for all such crimes and perpetrators and which justifies a higher penalty than that prescribed for the offenses themselves. That is one of the very purposes of an enhancement’s existence.”
 
 (People
 
 v.
 
 Hernandez
 
 (1988) 46 Cal.3d 194, 207-208 [249 Cal.Rptr. 850, 757 P.2d 1013].)
 

 The short answer, in light of
 
 Jackson
 
 and
 
 Equarte,
 
 is that this is not the typical enhancement to which
 
 Hernandez
 
 referred. In Proposition 8 the electorate saw fit unambiguously to classify as a serious felony
 
 any
 
 felony in the commission of which the defendant inflicts great bodily injury on anyone other than an accomplice. That particular felonies, whether or not otherwise individually designated as serious felonies, might invariably fall into this category would not invalidate the electorate’s classification.
 

 
 *1695
 
 2.
 
 Does Subdivision (c)(8) Require a Specific
 
 Intent?
 

 Gonzales asked the trial court to instruct the jury that to find a great bodily injury enhancement to be true the jury would be required to determine that Gonzales had acted “with the specific intent to inflict such injury . . . .”
 

 The trial court refused the requested instruction, and instead instructed the jury in pertinent part that the great bodily injury allegations required a “general criminal intent” which exists “[wjhen a person intentionally does that which the law declares to be a crime . . . even though he may not know his act or conduct is unlawful.” The court then instructed the jury, more specifically, that “[i]n order to prove the special allegations the People have to prove the following elements: One, that the defendant personally inflicted, two, great bodily injury on a person, three, who was not an accomplice to the crime charged. HD ... . H] The People do not have to prove that the defendant intended to cause the great bodily injury, but only that the great bodily injury was inflicted as the result of the defendant’s conduct.”
 

 In this court Gonzales renews his argument that to constitute a serious felony, a felony which would otherwise come within the great bodily injury category defined by Penal Code section 1192.7, subdivision (c)(8) must have been committed with a specific intent to inflict the injury. He asserts that “[t]he issue of a specific mental state was removed from the jury’s consideration,” and therefore the trial was rendered fundamentally unfair.
 

 Subdivision (c)(8) of Penal Code section 1192.7 does not contain an explicit specific-intent requirement, and no case has imposed such a requirement on the great bodily injury category of serious felony. To support his argument that a specific intent to inflict great bodily injury must be found, Gonzales relies on the etymology and asserted connotations of the word “inflict,” on judicial construction of the word in other statutes, and on assertions that the electorate and the Legislature intended such a requirement.
 

 We find Gonzales’s argument unpersuasive.
 

 Gonzales refers us to the 1986 edition of Webster’s Third New International Dictionary, which defines “inflict” as “to lay (a blow) on : cause (something damaging or painful) to be endured : impose” or “afflict.”
 
 (Id.
 
 at p. 1160.) None of these
 
 definitions
 
 incorporates an element of intent. The
 
 connotations
 
 of “inflict” may be taken to include a sense that the causation or imposition is effected by the actor’s affirmative conduct, but once again
 
 *1696
 
 the connotations do not invariably include a sense of intent and they by no means compel an association with the legalistic concept of
 
 specific
 
 intent. Gonzales directs us to the dictionary’s account of the
 
 etymology
 
 of “inflict,” but the etymology provides no additional insight: It appears that the word derives in part from a Latin verb which meant “to strike.” Gonzales points out that this derivation is or may be shared, in part and more remotely, by the English word “profligate” which is defined in terms of “dissipation . . . licentiousness . . . vice . . . corruption” as well as extravagance and “criminally excessive in spending or using”
 
 (id.
 
 at pp. 1811-1812), but the relevance of these observations to the issue before us is by no means clear.
 

 Our conclusion that the word “inflict,” by itself, does
 
 not
 
 necessarily mean or connote a specific intent is buttressed by the Legislature’s inferable perception that it is necessary explicitly to
 
 say,
 
 where necessary to express the legislative purpose, that a particular infliction of injury will be significant only if it is intentional. Perhaps the most striking example (because of its functional and rhetorical similarity in other respects to subdivision (c)(8) of Penal Code section 1192.7) is subdivision (a) of Penal Code section 12022.7, a provision for enhancement of sentence, without reference to recidivism, for “[a]ny person who,
 
 with the intent to inflict such injury,
 
 personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony . . . .” (Italics added.) Other examples are Penal Code sections 1203, subd. (e)(3) (“willfully”), 1203.075, subdivision (a) (“with the intent to inflict the injury”), and 12022.9, subdivision (a) (“with intent to inflict injury”). To accept Gonzales’s assertion that the word “inflict” itself means or connotes a specific intent, we would be obliged to conclude that the explicit language of intent the Legislature added to each of these other statutes was in fact unnecessary and therefore superfluous. We are unwilling thus to disregard the rule that whenever possible effect should be given to a statute as a whole, and every word and clause, so that no provision will be treated as useless or meaningless. (Cf.
 
 People
 
 v.
 
 Molina
 
 (1988) 202 Cal.App.3d 1168,1174 [249 Cal.Rptr. 273].)
 

 Among the several appellate decisions Gonzales cites in support of his argument we find only one,
 
 People
 
 v.
 
 Lovelace
 
 (1929) 97 Cal.App. 228, 231 [275 P. 489], which directly addresses the meaning of the word “inflict” in a penal statute which does not also contain explicit language of intent.
 
 Lovelace
 
 involved construction of a provision (as it then read) that “probation shall not be granted ... to one who in the perpetration of the crime inflicted great bodily injury or torture . . . .” (Pen. Code, § 1203, Stats. 1927, ch. 770, § 1, p. 1494; the comparable current provision is Pen. Code, § 1203, subd. (e)(3), which applies only to one “who
 
 willfully
 
 inflicted great bodily
 
 *1697
 
 injury or torture . . . .” [Italics added.].) Lovelace had pled guilty to involuntary manslaughter; he argued that he could not be denied probation on the basis of infliction of great bodily injury because the infliction had not been shown to be intentional. The Court of Appeal agreed with Lovelace. The court acknowledged that “possibly by neither the popular nor the dictionary definition of the word ‘inflicted’ does it necessarily follow that the meaning to be conveyed is that an actual intent must be in operation to impose a blow of any sort, or to cause distress or suffering . . . .” (97 Cal.App. at p. 231.) The extension of the court’s acknowledgment would have been that section 1203 (as it then read) would have foreclosed probation for any crime in which the perpetrator, whether intentionally or simply by criminal negligence, had inflicted great bodily injury. But the court pointed out the potential absurdity of such a result in this limited context: “It is undeniable that daily within this state dozens of automobile accidents occur in which ‘great bodily injury’ is ‘inflicted.’ Can it be true that in the enactment of the statute in question it was the intention of the legislature to include within its purview all misdemeanors or felonies which are thus ‘perpetrated’? We think not.” (97 Cal.App. at p. 233.) The court went on to conclude, on the basis of legislative history and of cases from other jurisdictions which suggest that “inflict” does connote “intent” or “an exercise of the will" or “something done voluntarily” or “actual wrong” (97 Cal.App. at pp. 231-234) that “within the meaning of the statute in question one who in the perpetration of a crime inflicts great bodily injury must do so wilfully and intentionally (expressly or impliedly) before the substantial rights relating to probation, to which, under the terms of the statute, he is entitled, will be denied him.” (97 Cal.App. at p. 235.)
 

 Lovelace
 
 has never been cited for the meaning of “inflict” in other statutory contexts. In the context of concern to us here, the question is not whether Gonzales is to be denied “the substantial rights relating to probation” but rather whether, in light of societal values which have been of increasing concern to the electorate and to the Legislature in the years since
 
 Lovelace
 
 was decided, Gonzales’s punishment should be enhanced to reflect the relative gravity of his crime.
 

 A clear indication that courts have been unwilling, in the context of sentence enhancements, to read a specific intent connotation into the word “inflict” absent clear legislative direction, is provided by cases which have compared Penal Code section 12022.7 to section 12022.8, an enhancement provision which refers to section 12022.7’s
 
 definition
 
 of great bodily injury but does not incorporate section 12022.7’s requirement that there have been an “intent to inflict such injury.” Section 12022.8 provides that “[a]ny person who inflicts great bodily injury, as defined in Section 12022.7, on
 
 *1698
 
 any victim” of one of several specified sex crimes shall receive an enhanced prison term. Courts of Appeal have repeatedly rejected contentions that section 12022.8 incorporates an element of specific intent to inflict the injury, reasoning that the Legislature was aware, when it enacted section 12022.8, that the provision differed from section 12022.7, and thus must be deemed purposefully to have omitted a specific-intent requirement from section 12022.8.
 
 (People
 
 v.
 
 Wallace
 
 (1993) 14 Cal.App.4th 651, 663-665 [17 Cal.Rptr.2d 721];
 
 People
 
 v.
 
 Martinez
 
 (1993) 13 Cal.App.4th 23, 28-29 [16 Cal.Rptr.2d 556]; cf.
 
 People
 
 v.
 
 Brown
 
 (1985) 174 Cal.App.3d 762, 766-768 [220 Cal.Rptr. 264]; cf.
 
 People
 
 v.
 
 Santos
 
 (1990) 222 Cal.App.3d 723, 744 [271 Cal.Rptr. 811] [different result under Pen. Code, § 667.7, subd. (a), which refers to any “felony in which the person inflicted great bodily injury as
 
 provided
 
 in Section 12022.7” (italics added)].) Implicitly these courts did not consider the word “inflict,” in and of itself, sufficient to imply an element of specific intent.
 

 To avoid the reasoning of the Penal Code section 12022.8 cases, and thus to salvage his assertion that the electorate and the Legislature should be deemed to have intended to incorporate a specific-intent requirement into subdivision (c)(8) of Penal Code section 1192.7, Gonzales argues that when, in 1986, it amended subdivision (c)(8) to add the requirement that the defendant have inflicted the injury “personally,” the Legislature was given no occasion to consider the intent element of the enhancement. Thus, Gonzales argues, omission of a phrase such as section 12022.7’s “with the intent to inflict such injury” should be assigned no significance. But then Gonzales essentially contradicts himself by adding a contention that evidence of the legislative history of the 1986 amendment (of which we have taken judicial notice) suggests that the Legislature consciously set about to conform subdivision (c)(8) to the provisions of functionally similar section 12022.7. In fact, the Legislature’s addition of the word “personally” did, to that extent, conform subdivision (c)(8) to section 12022.7. If the Legislature, having thus compared the two provisions, had further intended that subdivision (c)(8) should incorporate a specific intent requirement similar to section 12022.7, we can imagine no reason why the Legislature would not have borrowed again from section 12022.7 to add an explicit requirement of intent to subdivision (c)(8).
 

 We hold that subdivision (c)(8) of section 1192.7 does not require a specific intent to cause injury.
 

 It follows that it was not error to refuse to instruct the jury that it must find specific intent.
 

 
 *1699
 
 3.
 
 Must the Serious-felony Elements of the Prior Conviction Have Been Adjudicated,
 
 Then?
 

 Gonzales’s prior conviction for robbery is explicitly identified, by subdivision (c)(19) of Penal Code section 1192.7, as a serious felony, and Gonzales has raised no issue as to the propriety or effect of the jury’s finding that he had suffered that conviction.
 

 But Gonzales does challenge the jury’s finding that his prior conviction for gross vehicular manslaughter was for a serious felony.
 

 He first argues that “the use of a prior vehicular manslaughter, unaccompanied by a finding of personal infliction of great bodily injury or a finding pursuant to Penal Code section 12022.7, violates the appellant’s constitutional rights.” His position appears to be that because it had not been alleged, and proved or admitted,
 
 in the prior proceeding,
 
 in Kern County in 1985, that he had personally inflicted great bodily injury on a person other than an accomplice, the constitutional rights—primary among them the right to due process of law, including the right to confront adverse witnesses—he might have exercised had the issue been raised in 1985 were prejudicially compromised when the allegation was made and adjudicated for the first time in this proceeding.
 

 Gonzales relies primarily on
 
 People
 
 v.
 
 Hernandez, supra,
 
 46 Cal.3d 194, in which the Supreme Court held, as a matter both of statutory interpretation and of due process, that a Penal Code section 667.8 enhancement arising out of the circumstances of the currently charged crime cannot be imposed unless pled and proved.
 

 The due process requirement applied in
 
 Hernandez
 
 would not have been applicable, in the 1985 proceedings in Kern County, to the question whether Gonzales had inflicted great bodily injury in the collision which was the subject of those proceedings, because the question would not have related to a sentence enhancement in those proceedings. In
 
 People
 
 v.
 
 Ybarra
 
 (1988) 206 Cal.App.3d 546 [253 Cal.Rptr. 644], in a situation broadly analogous to that in which Gonzales found himself in 1985, Ybarra was charged with driving under the influence of an alcoholic beverage and causing bodily injury (Veh. Code, § 23153, subd. (a)) by a felony complaint which further alleged that Ybarra had inflicted great bodily injury within the meaning of Penal Code sections 667 and 1192.7. No prior serious felony was alleged, but after Ybarra pled guilty to the felony drunk driving charge the superior court found that the crime had been properly characterized as a serious felony. This court struck the superior court’s legal conclusion, reasoning that
 
 *1700
 
 the issue had been “prematurely raised”: “The complaint before the court did not allege defendant had suffered a prior serious felony conviction. Accordingly, the instant conviction could only affect [Ybarra] if he were to suffer conviction of a ‘serious felony’ in the fiiture. A decision as to whether or not the present offense qualified as a serious felony would at most constitute an advisory opinion relating to the hypothetical use of the current felony conviction to enhance punishment for a future offense. Such a ruling would violate the well-settled rule that courts should ‘avoid advisory opinions on abstract propositions of law. [Citations.]’ [Citation.] . . . [W]hether any future prosecution for a serious felony will occur, and if so, whether the instant conviction will then qualify to enhance the future sentence is entirely speculative, [f] . . . H] Further, the eventuality of an enhanced penalty would not be directly attributable to the crime now before us. ... ‘ “[I]n-creased penalties for subsequent offenses are attributable to the defendant’s status as a repeat offender and arise as an incident to the
 
 subsequent offense
 
 rather than constituting a penalty for the prior offense.” . . .’”
 
 (People
 
 v.
 
 Ybarra, supra,
 
 206 Cal.App.3d at p. 549, quoting from
 
 People
 
 v.
 
 Jackson, supra,
 
 37 Cal.3d at p. 833.)
 

 In short there was no justiciable issue, in the 1985 proceedings in Kern County, as to whether Gonzales had personally inflicted great bodily injury on a person other than an accomplice. Gonzales could not have asserted, and a fortiori he cannot now plausibly complain that he was denied, a right to litigate that issue in that proceeding.
 

 4.
 
 Was the Preliminary Examination Transcript
 
 Admissible?
 

 Under Penal Code section 667, the issue, concerning the 1985 collision, that became justiciable when the People sought serious-felony enhancements in this proceeding was whether Gonzales “ha[d] been convicted of a serious felony” arising out of that collision. (Pen. Code, § 667, subd. (a).) In
 
 People
 
 v.
 
 Guerrero
 
 (1988) 44 Cal.3d 343 [243 Cal.Rptr. 688, 748 P.2d 1150], the Supreme Court held that to find “the substance of a prior conviction,” where the nature of the conviction for purposes of Penal Code sections 667 and 1192.7 is not apparent (as it was, for example, in the case of Gonzales’s prior conviction for robbery) from the face of the judgment, “the trier of fact may look to the entire record of the conviction. [][] Such a rule is both fair and reasonable. To allow the trier of fact to look to the entire record of the conviction is certainly reasonable: it promotes the efficient administration of justice and, specifically, furthers the evident intent of the people in establishing an enhancement... [in terms that refer] to
 
 conduct,
 
 not a specific
 
 crime.
 
 To allow the trier to look to the record of the
 
 conviction—but no
 
 further—is also fair: it effectively bars the prosecution
 
 *1701
 
 from relitigating the circumstances of a crime committed years ago and thereby threatening the defendant with harm akin to double jeopardy and denial of speedy trial.” (44 Cal.3d at p. 355.)
 

 The People acknowledge that at trial, to prove that the gross vehicular manslaughter of which Gonzales had been convicted in 1985 (although not explicitly enumerated in Penal Code section 1192.7) had been a serious felony within the meaning of subdivision (c)(8), the prosecutor relied on the 1985 preliminary examination transcript. Trial defense counsel interposed objections that the transcript was irrelevant, that it was hearsay, and that its use would deny Gonzales his constitutional rights to confront adverse witnesses and to other aspects of due process of law. The objections were overruled and all but a few pages of the transcript were admitted in evidence.
 

 In this court Gonzales argues (1) that in light of
 
 People
 
 v.
 
 Winson
 
 (1981) 29 Cal.3d 711, 715-719 [175 Cal.Rptr. 621, 631 P.2d 55], use of the preliminary examination transcript in this proceeding must be deemed to have denied, without an adequate showing of good cause, his rights to confront and to cross-examine adverse witnesses, and (2) that even were the transcript admissible as a whole, under
 
 People
 
 v.
 
 Abarca
 
 (1991) 233 Cal.App.3d 1347 [285 Cal.Rptr. 213] the testimony of individual witnesses at the preliminary examination was inadmissible over his timely hearsay objection.
 

 The essence of Gonzales’s arguments is not new to this court, which in
 
 People
 
 v.
 
 Goodner
 
 (1990) 226 Cal.App.3d 609 [276 Cal.Rptr. 542] rejected another defendant’s comparable contentions.
 

 Goodner
 
 based its pertinent holdings on another Court of Appeal’s opinion in
 
 People
 
 v.
 
 Castellanos
 
 (1990) 219 Cal.App.3d 1163 [269 Cal.Rptr. 93]. In
 
 Castellanos
 
 the pertinent issue in the trial court had been whether four prior burglary convictions, apparently based on Castellanos’s guilty pleas, had been for
 
 residential
 
 burglaries within the meaning of subdivision (c)(18) of Penal Code section 1192.7. The trial court admitted preliminary examination transcripts in all four prior proceedings; the Court of Appeal concluded the transcripts had been admissible.
 

 First, the Court of Appeal reasoned, each of the transcripts was part of “the ‘entire record of conviction’ ” within the meaning of Guerrero; the Court of Appeal concluded that the entire record includes “all relevant documents in the court file of the prior conviction.”
 
 (People
 
 v.
 
 Castellanos, supra,
 
 219 Cal.App.3d at p. 1172.)
 

 
 *1702
 
 Second, the Court of Appeal acknowledged that a preliminary examination transcript “is hearsay as it is comprised of testimony given under oath in an earlier proceeding which must normally qualify under an exception to the hearsay rule before it is admissible,” and that such former testimony normally must come in, if at all, under Evidence Code section 1291’s exception predicated upon showings that the declarant is now unavailable as a witness and that the party against whom the testimony is offered had had, in the prior proceeding, “the ‘right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing.’ [Citation.]” (Pe
 
 ople
 
 v.
 
 Castellanos, supra,
 
 219 Cal.App.3d at p. 1173.) “In this case, while there was no specific showing of unavailability of the witnesses who testified at the preliminary hearing . . . , Castellanos had confronted and cross-examined those witnesses with respect to the burglaries in the earlier proceedings with the same motive that he would have had if he were allowed the opportunity to cross-examine them in this case. However, to allow him to do so here would be totally contrary to
 
 Guerrero's
 
 bar against relitigating the circumstances of an earlier crime. [Citation.] [][] If this were a proceeding where a defendant’s guilt on the offense bound over from the preliminary hearing was being litigated or his probation or parole was being revoked on the basis of a new offense, the lack of a specific showing of unavailability of the witnesses would certainly preclude the admission of the preliminary hearing transcripts. (See
 
 People
 
 v.
 
 Winson
 
 (1981) 29 Cal.3d 711 . . . .) However, the nature of the proceedings here, to determine whether a defendant has suffered a prior serious felony conviction (not to determine whether he is guilty of that earlier offense), is a different breed of animal. Because the preliminary hearing transcript testimony and other relevant court documents, albeit hearsay, are not being offered against the defendant in the traditional sense, but are merely being offered for the neutral inquiry as to the nature of the earlier offense, i.e., to explain the defendant’s conduct which comprised the crime he admitted to have suffered in the earlier proceeding, they are admissible as exceptions to the hearsay rule to explain his admissions. [Citation.] [][] Such limited admissibility comports with
 
 Guerrero's
 
 goal of promoting ‘the efficient administration of justice.’ [Citation.]” (219 Cal.App.3d at pp. 1173-1174, fn. omitted.)
 

 In
 
 Goodner
 
 the Penal Code section 1192.7 issue and the procedural situation were similar to those in
 
 Castellanos,
 
 except that in
 
 Goodner
 
 the trial court refused to give dispositive weight to a preliminary examination transcript tendered to prove that the prior burglary (to which Goodner had pled guilty) had been residential, and it was the People who raised the issue on appeal. This court adopted
 
 Castellanos's
 
 reasoning concerning the hearsay rule and added that “[p]erhaps equally important, ‘[t]he main reasons for excluding hearsay evidence are: “(a) The statements are not made under
 
 *1703
 
 oath; (b) the adverse party has
 
 no opportunity to cross-examine
 
 the person who made them; and (c) the jury cannot observe his
 
 demeanor
 
 while making them.” [Citations.]’ [Citation.] Given that statements made during a preliminary hearing are made under oath and are subject to cross-examination, we conclude defendant is afforded adequate protection from the dangers of out-of-court statements contained in the transcript of that proceeding.”
 
 (People
 
 v.
 
 Goodner, supra,
 
 226 Cal.App.3d at p. 616, fn. omitted, quoting from
 
 People
 
 v.
 
 Williams
 
 (1990) 222 Cal.App.3d 911, 916 [272 Cal.Rptr. 212].) Adopting
 
 Castellanos's
 
 characterization of the proceeding as one “ ‘to determine whether a defendant has suffered a prior serious felony conviction (not to determine whether he is guilty of that earlier offense),’ ” this court concluded that in such a proceeding “the entire preliminary hearing transcript, albeit hearsay, [is] . . . admissible as an exception to the hearsay rule to explain [the defendant’s] admissions [by his prior guilty plea].” (226 Cal.App.3d at p. 616, quoting from
 
 People
 
 v.
 
 Castellanos, supra,
 
 219 Cal.App.3d at p. 1174.)
 

 Castellanos
 
 acknowledged
 
 Winson
 
 (which had applied the former testimony exception more strictly where the preliminary examination transcript had been tendered as evidence against the defendant at a probation revocation hearing; cf. also
 
 People
 
 v.
 
 Arreola
 
 (1994) 7 Cal.4th 1144, 1159 [31 Cal.Rptr .2d 631, 875 P.2d 736]) but distinguished it procedurally.
 

 Abarca,
 
 on which Gonzales also relies, postdated both
 
 Castellanos
 
 and
 
 Goodner.
 
 The pertinent issue in
 
 Abarca,
 
 once again, was whether a prior burglary to which Abarca had pled guilty had been
 
 residential.
 
 To determine the nature of the prior burglary the trial court relied only on a transcript of proceedings on the guilty plea, in the course of which “. . . Abarca answered ‘yes’ when asked by that court if he pled guilty to burglary of a ‘residence.’ ”
 
 (People
 
 v.
 
 Abarca, supra,
 
 233 Cal.App.3d at p. 1349.) The Court of Appeal found that the transcript “was within the ‘record’ contemplated by
 
 Guerrero'' (id.
 
 at p. 1350), suggested that its finding “does not answer what items within the record are
 
 admissible . .
 
 .”
 
 (ibid.),
 
 but concluded that Abarca’s response had been admissible, notwithstanding its hearsay character and lack of an opportunity to cross-examine in the current proceedings, because the transcript itself came within the official records and writings exception of Evidence Code section 1280 and Abarca’s reported response to the court’s question was admissible as a party’s admission under Evidence Code section 1220. Thus
 
 Abarca
 
 had no occasion to reach the issue of testimony of third-party witnesses presented in
 
 Castellanos, Goodner,
 
 and this case.
 

 Gonzales asks that we reconsider this court’s decision in
 
 Goodner.
 
 We have done so, and are satisfied to adhere to the analysis we adopted in that
 
 *1704
 
 case.
 
 Castellanos, Goodner,
 
 and
 
 Abarca
 
 all make clear that in these circumstances a defendant must be assured of an opportunity to dispute the evidence presented against him. The record in this action reflects that Gonzales was given every opportunity to do so. It was not error to receive and consider the Kern County preliminary examination transcript.
 

 CALJIC No. 2.90
 

 By supplemental brief Gonzales asserted that the trial court’s reasonable doubt instruction, taken directly from Penal Code section 1096 and CALJIC No. 2.90, violated the due process clause of the federal Constitution. The substance of Gonzales’s contention has been rejected in California
 
 (People
 
 v.
 
 Sandoval
 
 (1992) 4 Cal.4th 155, 185-186 [14 Cal.Rptr.2d 342, 841 P.2d 862];
 
 People
 
 v.
 
 Johnson
 
 (1992) 3 Cal.4th 1183, 1234-1235 [14 Cal.Rptr.2d 702, 842 P.2d 1];
 
 People
 
 v.
 
 Jennings
 
 (1991) 53 Cal.3d 334, 385-386 [279 Cal.Rptr. 780, 807 P.2d 1009]) and, dispositively, in the United States Supreme Court as well
 
 (Victor
 
 v.
 
 Nebraska
 
 (1994) 511 U.S__[127 L.Ed.2d 583, 114 S.Ct. 1239]).
 

 The judgment of conviction, incorporating findings that all the enhancement allegations were true, is affirmed.
 

 Premo, Acting P. J., and Elia, J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied February 16, 1995. Mosk, J., and Arabian, J., were of the opinion that the petition should be granted.