Filed 9/11/23  P. v. Macias CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>PABLO BALLADARES MACIAS,<br><br>Defendant and Appellant. | F084989<br><br>(Kings Super. Ct. No. 17CMS-3955)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Michael J. Reinhart, Judge.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Ivan P. Marrs, and Kimberley A. Donohue, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Pablo Balladares Macias was convicted of two counts of gross vehicular manslaughter while intoxicated with true findings on great bodily injury (GBI) allegations as to both counts. Defendant contends the GBI enhancements must be stricken because a GBI enhancement may not attach to a vehicular manslaughter conviction. He also contends the trial court erred by failing to instruct the jury that a GBI enhancement cannot be based on an injury to an accomplice. The People concede that a GBI enhancement does not apply to a manslaughter conviction and those enhancements must be stricken. With respect to defendant's other contention, the People respond that the evidence did not support an accomplice instruction and any instructional error was harmless. We strike the GBI enhancements, direct the trial court to prepare an amended abstract of judgment, and otherwise affirm.

## PROCEDURAL SUMMARY

On May 2, 2022, the District Attorney of Kings County filed a third amended information charging defendant with: gross vehicular manslaughter while intoxicated of R.E. (Pen. Code, § 191.5, subd. (a); count 1);[1] gross vehicular manslaughter while intoxicated of S.H. (*ibid.*; count 2); and misdemeanor driving with a suspended license (Veh. Code, § 14601.2, subd. (a); count 3). The information alleged that defendant personally inflicted GBI on three victims, J.S., A.M. and T.S. (§ 12022.7, subd. (a)), as to counts 1 and 2. The information further alleged that defendant had suffered two prior "strike" convictions within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) which also qualified as serious felony convictions (§ 667, subd. (a)).[2]

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] The trial was bifurcated for the prior convictions at defendant's request. Defendant waived his right to a jury trial regarding his prior convictions.

2.

On May 5, 2022, the jury found defendant guilty on all counts. The jury found true the enhancements for GBI on J.S. and T.S., but not true on A.M. In a bifurcated proceeding, defendant admitted his two prior strike convictions.

On September 1, 2022, the trial court sentenced defendant to 50 years to life consecutive to six years as follows: 25 years to life plus an additional three years for the GBI enhancement on count 1; 25 years to life plus an additional three years for the GBI enhancement on count 2; and 180 days in jail on count 3 (deemed served).

Defendant filed a timely notice of appeal.

## FACTUAL SUMMARY

On August 31, 2017, M.R. was working the graveyard shift at a gas station in Hanford. M.R. was inside the store when he saw a truck hit the curb outside the store. M.R. called Hanford Police Officer Brian Scandura to report the incident.[3] Scandura did not answer his phone. Scandura called M.R. back 15 to 20 minutes later, and M.R. reported the incident with the truck to Scandura.

At approximately 1:00 a.m. that night, defendant was driving a silver Dodge truck north on 9 ¼ Avenue in Hanford at a speed between 72 and 96 miles per hour. The speed limit on 9 ¼ Avenue was 45 miles per hour. J.S. was driving his Toyota truck east on Grangeville Boulevard. Defendant drove the Dodge into the intersection of Grangeville Boulevard and 9 ¼ Avenue colliding with J.S.'s Toyota. Video surveillance from a nearby residence captured the collision.[4] There was an ice chest among the collision debris, as well as empty and full beer cans.

---

[3] M.R. had Scandura's phone number from previous contacts with him.

[4] Officer Scandura told M.R. when he returned his call that there was a report of an accident with the same description of the truck M.R. saw hit the gas station's curb. M.R. went to the scene of the accident that night. M.R. confirmed that the same truck that hit the gas station's curb was involved in the accident.

3.

R.E. and S.H., the female occupants of the Dodge, were both killed in the crash. R.E. was found upside down in the Dodge with her face down near the pedals. She suffered multiple blunt force trauma injuries and was killed instantly. S.H. was discovered in the back seat. Her death was caused by incineration with deep and extensive charring throughout her body. T.S., another occupant in the Dodge, sustained injuries to his face, brain, ribs, spleen, and liver. Defendant sustained injuries to his ribs, right sacral ala, right femoral head, right talus, and fractures to the L3 and L4 vertebrae. Defendant's brother, A.M., was also in the Dodge and suffered a concussion from the collision. J.S., the driver of the Toyota, survived the collision but sustained a traumatic brain injury, bruising to the heart, and fractures to his tibia, fibula, and femur. Defendant, A.M. and T.S. were transported to Kaweah Delta Hospital in Visalia.

Officer Scandura went to the hospital to draw blood and interview survivors. Defendant's blood-alcohol content was 0.13 percent. Defendant also tested positive for cocaine and cannabinoids. A.M.'s blood-alcohol content was 0.07 percent, and he tested positive for cannabinoids. T.S.'s blood-alcohol content was 0.178 percent. T.S. also tested positive for Benzodiazepine and cannabinoids. J.S.'s blood tested negative for alcohol.[5] An expert opined that generally a person's ability to drive is impaired with a blood-alcohol content of 0.08 percent.

A.M. told Officer Scandura at the hospital that defendant was driving the Dodge, and he was in the back seat sleeping. Defendant's driver's license was suspended at the time due to a September 1, 2004, conviction for driving under the influence.

Hanford Police Officer Mitch Smith advised defendant of his *Miranda*[6] rights and interviewed him on October 9, 2017. Defendant said that he drove to the park on August

---

[5] R.E.'s blood-alcohol content was 0.18 percent, and she tested positive for cannabinoids. S.H.'s blood-alcohol content was 0.03 percent, and there were traces of Benzodiazepines in her system.

[6] *Miranda v. Arizona* (1966) 384 U.S. 436.

4.

31, 2017, but denied that he was driving when the collision occurred. Defendant told Smith that one of the females was driving. Smith also interviewed A.M. in October 2017 who told Smith that defendant usually drives the truck.

A.M. testified that prior to the collision, defendant, A.M., T.S., R.E., and S.H. were "hanging around" at a park in Hanford. A.M. did not recall if the group was drinking. A.M. did not remember telling Officer Scandura that defendant was driving the truck or that he was asleep in the back seat during the collision. He further testified that he never saw defendant drive the truck and did not remember telling Officer Smith that defendant normally drives that truck. A.M. said S.H. was driving the truck on the night of the collision.

## DISCUSSION

### I. GBI Enhancement on Manslaughter Convictions

Defendant contends the enhancements must be reversed because a GBI enhancement may not attach to a vehicular manslaughter conviction. The People agree, as do we.

Section 12022.7, subdivision (a) states, "[a]ny person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." (§ 12202.7, subd. (a).) However, subdivision (g) of section 12022.7 states, "[t]his section shall not apply to murder or manslaughter or a violation of Section 451 or 452. Subdivisions (a), (b), (c), and (d) shall not apply if infliction of great bodily injury is an element of the offense." (§ 12202.7, subd. (g).)

In *People v. Cook* (2015) 60 Cal.4th 922, the defendant's speeding and reckless driving caused an automobile accident killing three people and injuring a fourth. The jury found the defendant guilty of three counts of vehicular manslaughter for the three

5.

victims who died. (*Id.* at p. 924.) The jury also found true three allegations that the defendant personally inflicted GBI as to the first manslaughter count. (*Ibid.*) Two of the GBI allegations were related to the two victims who died and the third was for the surviving victim. (*Id.* at pp. 924–925.) The surviving victim was not the subject of any other charge or conviction. (*Id.* at p. 925.) The defendant was sentenced to nine years eight months including three years for the GBI enhancement for the surviving victim. (*Ibid.*) The Court of Appeal upheld the enhancement. (*Ibid.*) The Supreme Court reversed and determined that "the sentence for manslaughter may not be enhanced for the infliction of [GBI] as to anyone." (*Id.* at p. 924.) The Court held that "[s]ubdivision (g) [of section 12022.7] means what it says—[GBI] enhancements simply do not apply to murder or manslaughter." (*Id.* at p. 935.)

Here, as in *Cook*, the jury found defendant guilty of gross vehicular manslaughter for the two victims who died, R.E. and S.H. The jury also found true the enhancements for GBI on J.S. and T.S., two of the surviving victims. The trial court imposed two consecutive three-year terms, one for each GBI enhancement. Pursuant to *Cook*, a GBI enhancement under section 12022.7 cannot attach to defendant's manslaughter convictions. We therefore strike defendant's two GBI enhancements.

## II.     Instructional Error

Defendant contends that although the GBI enhancements must be stricken, the underlying jury findings of GBI on T.S. as to counts 1 and 2 still exist, which makes the manslaughter convictions serious felonies. Defendant contends the GBI findings as to T.S. must be vacated because the trial court failed to instruct the jury that the enhancement cannot be based on an injury to an accomplice.

### A.     *Additional Background*

The trial court held an off-record jury instruction conference with the prosecutor and defense counsel. The court confirmed agreement by both parties to the instructions on the record. The instruction for the GBI allegations stated: "If you find the defendant

guilty of the crimes charged in Counts [1], [2] or the lesser crimes of [v]ehicular manslaughter with ordinary negligence while intoxicated in violation of … section 191.5(b) or [v]ehicular manslaughter with ordinary negligence while intoxicated in violation of … section 191.5(b), you must then decide whether the People have proved the additional allegation that the defendant personally inflicted [GBI] on [J.S.], [A.M.] and or [T.S.] during the commission of that crime. [¶] [GBI] means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm." This instruction was pursuant to CALCRIM No. 3160.

The trial court did not instruct the jury that the prosecution must also prove that the victims were not accomplices.[7] The verdict form returned by the jury for the GBI enhancement on T.S. contained a true finding that defendant "personally inflicted [GBI] in the commission of the offense upon [T.S.], not an accomplice to the above offense, within the meaning of Section 12022.7(a) …."

**B.** *Applicable Law and Analysis*

Although the sentence for the GBI enhancements on counts 1 and 2 must be stricken, the jury's findings of GBI on T.S. as to those counts remain. These findings render defendant's manslaughter convictions serious felonies for purposes of the Three

---

[7] CALCRIM No. 3160 offers the following bracketed instructions:

"The People must also prove that *<insert name of injured person>* was not an accomplice to the crime."

"A person is an *accomplice* if he or she is subject to prosecution for the identical crime charged against the defendant. Someone is subject to prosecution if he or she personally committed the crime or if: [¶] 1. He or she knew of the criminal purpose of the person who committed the crime; [¶] AND [¶] 2. He or she intended to, and did in fact, (aid, facilitate, promote, encourage, or instigate the commission of the crime/ [or] participate in a criminal conspiracy to commit the crime)."

Jury instructions in brackets "provide optional choices that may be necessary or appropriate, depending on the individual circumstances of the case." (Judicial Council of Cal., Criminal Jury Instn. (2022) p. xxvi.)

Strikes law. (§§ 1192.7, subd. (c)(8), 1192.8, subd. (a) [a defendant commits a serious felony if, in the commission of a felony, the defendant personally inflicts GBI on another person not an accomplice]; *People v. Gonzales* (1994) 29 Cal.App.4th 1684, 1688.) Therefore, we must address whether the jury was properly instructed on these allegations.[8]

We review defendant's claim of instructional error de novo. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579 (*Mitchell*).) " ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." ' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154.)[9]

"[A] trial court's failure to instruct the jury on an element of a sentence enhancement provision (other than one based on a prior conviction), is federal constitutional error if the provision 'increases the penalty for [the underlying] crime

---

[8] The People responded that any instructional error was harmless because defendant did not challenge the other true findings of GBI on J.S. as to counts 1 and 2, and those findings would qualify defendant's two vehicular manslaughter convictions as serious felonies. Since we conclude any instructional error was harmless, we do not address the People's argument that a GBI finding on counts 1 and 2 as to a single victim may qualify *both* defendant's manslaughter convictions as serious felonies.

[9] To the extent defendant raises state law claims regarding the trial court's purported instructional error, those claims are subject to forfeiture because he did not object to the instructions below. (*Mitchell*, *supra*, 7 Cal.5th at p. 579.) "But failure to object to instructional error will not result in forfeiture if the substantial rights of the defendant are affected." (*Ibid.*) Defendant claims the instructional error violated his due process rights. If true, this would affect defendant's substantial rights and thus his claim is not forfeited. (See also § 1259 [the "appellate court may also review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby"].) Since we find no federal constitutional error, we need not determine if defendant forfeited any state law claims because those claims would also necessarily fail.

beyond the prescribed statutory maximum.' [Citation.] Such error is reversible under [*Chapman v. California* (1967) 386 U.S. 18, 24] unless it can be shown 'beyond a reasonable doubt' that the error did not contribute to the jury's verdict." (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 326; see also *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490; *Neder v. United States* (1999) 527 U.S. 1, 19.) In determining whether an error contributed to the jury's verdict, we " 'conduct a thorough examination of the record. If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error – for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding – it should not find the error harmless.' [Citation.] On the other hand, instructional error is harmless 'where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence.' [Citations.] Our task, then, is to determine 'whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.' " (*People v. Mil* (2012) 53 Cal.4th 400, 417.)

Defendant contends section 12022.7, subdivision (a) requires the jury to find beyond a reasonable doubt that defendant personally inflicted GBI on a nonaccomplice during the commission of a felony. Defendant contends the trial court's failure to instruct on this "element" of the enhancement was prejudicial error. We need not address whether the court was required to submit this question to the jury because even assuming error in failing to do so, we conclude the error was harmless beyond a reasonable doubt.

A GBI enhancement under section 12022.7, subdivision (a) requires the defendant personally inflicted GBI upon "any person *other than an accomplice*" during the commission of a felony. (§ 12202.7, subd. (a), italics added.) "[A]n accomplice is one who aids or promotes the perpetrator's crime with knowledge of the perpetrator's unlawful purpose *and* an intent to assist in the commission of the target crime." (*People v. Williams* (2008) 43 Cal.4th 584, 637; see also § 1111 [an accomplice is "one who is

liable to prosecution for the identical offense charged against the defendant"].) An accomplice must be chargeable with the identical crime as a principal by aiding and abetting in the commission of that crime, or as a coconspirator in its commission. (*People v. Sully* (1991) 53 Cal.3d 1195, 1227.) Mere presence at the scene of the offense does not establish a person as an accomplice. (*People v. Rodriguez* (1986) 42 Cal.3d 730, 761.)

The elements for gross vehicular manslaughter under "section 191.5 are: (1) driving a vehicle while intoxicated; (2) when so driving, committing some unlawful act, such as a Vehicle Code offense with gross negligence, or committing with gross negligence an ordinarily lawful act which might produce death; and (3) as a proximate result of the unlawful act or the negligent act, another person was killed." (*People v. Verlinde* (2002) 100 Cal.App.4th 1146, 1159 (*Verlinde*), disapproved on another point in *People v. Cook*, *supra*, 60 Cal.4th at p. 939.) T.S. must also be chargeable with gross vehicular manslaughter or have encouraged defendant to commit the crime to be an accomplice.

Defendant relies on *Verlinde* in support of his contention that the trial court was obligated to instruct the jury to make a finding on whether T.S. was an accomplice. *Verlinde* is factually distinguishable. In *Verlinde*, the defendant operated the car's stick shift and pedals while another person, Vessells, steered the car. After the defendant took over the steering wheel, she crashed the car resulting in one passenger's death and injuries to the other passengers. (*Verlinde*, *supra*, 100 Cal.App.4th at pp. 1155–1156.) The Court of Appeal found the trial court erred by failing to provide the jury with an opportunity to decide if Vessells was an accomplice or inform the jury that the GBI enhancement could not be imposed on an accomplice. (*Id.* at pp. 1167–1168.) The court acknowledged: "Ordinarily, accomplice liability under a coperpetrator theory or an aider and abettor theory is not associated with the crimes of gross vehicular manslaughter and felony drunk driving because of the individual nature of the act and mental state

10.

involved. However, this case presents an unusual factual situation with shared driving by two intoxicated individuals." (*Id.* at p. 1160.) The court concluded that "Vessells was a potential accomplice of gross vehicular manslaughter and felony drunk driving," and "whether Vessells was an accomplice presented factual questions for the jury." (*Id.* at p. 1162.)

Nothing shows this case presents "an unusual factual situation" different from the ordinary drunk driving case where accomplice liability is not an issue despite defendant's arguments to the contrary. (*Verlinde*, *supra*, 100 Cal.App.4th at p. 1160.) There is no evidence that T.S. was jointly driving the Dodge with defendant at any point before or during the collision. There is no evidence of T.S. driving whatsoever. There is also no evidence that T.S. encouraged defendant to drive while intoxicated. A.M. testified that the group was hanging around at a park before the collision but did not recall if they were drinking. The ice chest with empty and full beer cans at the collision as well as the blood-alcohol levels of the Dodge occupants permitted, at best, an inference that the group may have been drinking together prior to the crash. Yet this evidence is insufficient to indicate T.S. encouraged defendant to drive while intoxicated.

Furthermore, the prosecution argued that *defendant* personally committed the offenses. Defendant told Officer Smith that he was not driving when the collision occurred and claimed one of the females was driving. Defendant's brother, A.M., testified that S.H. was driving, not defendant. Defense counsel conceded in his closing argument that "[S.H.] could not have been driving" because her body was found in the back seat but argued that R.E. may have been driving when the collision occurred. While there was a factual dispute about whether defendant or one of the female occupants was driving, there were no allegations by the prosecutor or defendant that T.S. was driving or played a part in defendant's decision to drive while intoxicated.

Defendant's reliance on *People v. Henley* (1999) 72 Cal.App.4th 555, is inapt. In *Henley*, the defendant had a prior conviction for evading a police officer (Veh. Code,

§ 2800.3) to which he pled no contest. The facts related to the plea showed that Henley engaged in a high-speed chase with the police officer on his motorcycle. Henley's passenger sustained a back injury and broken ankle from the chase. The trial court inferred from the record of the prior conviction that the passenger was not an accomplice and thus, found that the conviction qualified as a serious felony. (*Henley*, at pp. 560–561.) The court of appeal reversed holding that the trial court's finding deprived the defendant of due process because he "never had a meaningful opportunity to defend against the prior serious felony conviction allegation." (*Id*. at p. 566.)

This case does not involve a prior conviction allegation regarding a potential accomplice. Defendant had an opportunity at trial to present evidence that T.S. was an accomplice to the crime and therefore could not serve as the basis for a GBI enhancement. He presumably did not do so because there was no evidence to support that allegation. Defendant's arguments that the evidence is susceptible to a finding that T.S. encouraged defendant to drive while intoxicated are unsubstantiated speculation. Finally, the verdict form reflects the jury's findings on counts 1 and 2 that T.S. was "not an accomplice." (See e.g., *People v. Majors* (1998) 18 Cal.4th 385, 410 [error in describing elements in oral instructions was harmless due in part to inclusion of element on verdict form].) While those findings, standing alone, would likely be insufficient in the absence of an instruction permitting the jury to determine whether a person was an accomplice, it is consistent with our conclusion that no evidence in the record supports T.S. having been an accomplice.

The evidence was overwhelming and uncontested that T.S. was merely a passenger and not an accomplice to defendant's crimes. No rational juror could have found T.S. was an accomplice based on this record. Any instructional error was harmless beyond a reasonable doubt, and we find no basis to vacate the jury's findings that defendant personally inflicted GBI on T.S. as to counts 1 and 2.

## DISPOSITION

The two terms for the GBI enhancement as to J.S. and T.S. (§ 12202.7, subd. (a)) are stricken. The trial court is directed to prepare an amended abstract of judgment reflecting the modified sentence and shall forward a copy of the amended abstract of judgment to all appropriate entities. As so modified, the judgment is affirmed.

POOCHIGIAN, Acting P. J.

WE CONCUR:

FRANSON, J.

SNAUFFER, J.