Filed 7/27/23  P. v. Lopez-Suazo CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAMIAN ANTONIO LOPEZ-SUAZO,<br><br>    Defendant and Appellant. | B318848<br><br>Los Angeles County<br>Super. Ct. No. NA107838 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Chet L. Taylor, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Richard B. Lennon and Olivia Meme, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Stephanie A. Miyoshi and Kathy S. Pomerantz, Deputy Attorneys Generals.

_____

Appellant Damian Lopez-Suazo raises five issues in this appeal. The People concede three of them. We affirm in part, reverse in part, and remand with directions.

A jury convicted appellant of attempted premeditated murder of a peace officer, attempted second degree robbery, assault with a semiautomatic firearm, carjacking, driving or taking a vehicle without consent, fleeing a pursuing peace officer's vehicle while driving recklessly, possession of a firearm by a felon, and assault with a semiautomatic weapon upon a peace officer. The jury also found true 12 allegations that appellant personally used a handgun in violation of Penal Code[1] sections 12022.53, subdivision (a) and 12022.5, subdivisions (b) and (d). It was also alleged and found true that appellant suffered a prior strike offense within the meaning of Penal Code sections 667, subdivision (d), 1170.12, subdivision (b), and the Three Strikes Law. The trial court sentenced appellant to a total aggregate term of life plus 28 years four months in prison. Appellant filed a timely notice of appeal.

## STATEMENT OF FACTS

On November 7, 2017, Ruben Aguilar Melena parked his pickup truck in the driveway of his Long Beach home and left it running while he took his child inside the house. When he returned to the driveway, he saw the truck being driven away.

The next day Officer James Kroeger of the Long Beach Police Department responded to a call about a suspicious vehicle in an alley off Stanley Avenue. When he arrived, Officer Kroeger saw a pickup truck under a tarp and appellant standing next to an open passenger-side door. In response to Officer Kroeger's

---

[1] Undesignated statutory references are to the Penal Code.

questions, appellant said the car was his; he had the keys; he was not on probation or parole; he did not have a driver's license; there were no weapons in the truck; there was marijuana inside. Officer Kroeger walked to his police car, reported the license plate of the pickup truck, and learned it was stolen. He returned to appellant, who did not comply with Officer Kroeger's instructions to interlace his fingers behind his head. Instead, appellant grabbed at the front of Officer Kroeger's uniform and tugged on the holster of his gun, ultimately getting his weapon. Both men fell to the ground. Officer Kroeger heard a "pop" and felt pain near his left ear lobe. Appellant pointed the gun at Officer Kroeger's head, trying to fire it and saying, "I don't want to do this." He then ran away through the gate of an apartment complex. Officer Kroeger retrieved his shotgun from the patrol car and pursued appellant on foot. Backup arrived and Officer Kroeger was taken to the hospital. A live cartridge from a firearm and a spent bullet with its casing were found in the alley.

A few hours later that night, Anthony Cruz and two friends were in the living room of Cruz's home on Stanton Place in Long Beach, about 0.6 miles from the alley where Officer Kroeger was shot. Cruz heard a noise outside, where he found appellant trying to steal his mini motor bike. Cruz asked appellant what he was doing and appellant responded that he needed the bike. Cruz told appellant the bike would not start; appellant begged him to let him have the bike. Cruz refused and appellant pulled out a gun, waved it around, released its slide, and verbally threatened Cruz.

As this was happening, Brittney Watson, Cruz's girlfriend, drove up in a red Honda Accord. Appellant got into the passenger side of the Honda, pointed the gun at Watson, and told her to drive. Cruz pulled Watson and the keys out of the car. Appellant then got out and pointed the gun at everyone. Cruz gave appellant the keys and he sped off in the Honda.

Law enforcement arrived at Cruz's house in response to a 911 call and found a live handgun cartridge that matched the style of ammunition used by the Long Beach Police Department.

Long Beach Police Officer Trevor Costin heard the call about the carjacking, spotted the red Honda, and started to follow it. After a highspeed pursuit, appellant drove through an Arco station. He appeared to be trying to get out of the Honda. After shots were fired, appellant was taken into custody.

In his defense, appellant admitted he stole the pickup truck and planned to sleep inside of it because he was unhoused. He also admitted he was a regular abuser of methamphetamine and was especially paranoid the night of his arrest. He panicked when Officer Kroeger told him to put his hands behind his head, "man-handling" him by putting him in a chokehold. He believed Officer Kroeger was going to kill him so appellant reached for the gun. He denied pointing the gun at anyone or threatening to kill anyone. He was "so high . . . so out of it" that he drove the red Honda in circles firing a round through the roof of the car. The police shot him with a rubber bullet and took him to the hospital. He woke up in jail two days later with no memory of being in the hospital.

4

## DISCUSSION

I.  **The Trial Court Abused Its Discretion When It Refused to Consider the District Attorney's Special Directive as Relevant to the People's Motion to Dismiss the Firearm Enhancement Allegations.**

The People filed a motion to dismiss the 12 firearm enhancements alleged against appellant. In support of their motion, the People cited Los Angeles County District Attorney George Gascon's "Special Directives 20-08, 20-08.1, 20-08.2 and 20-14." The Directives, issued in December 2020, set out policy reasons why dismissal of the enhancements was in the interest of justice. Special Directive 20-08 explained that the current statutory ranges for criminal offenses alone, without enhancements, are sufficient to both hold people accountable and also to protect public safety. It also stated that "studies show that each additional sentence year causes a 4 to 7 percent increase in recidivism that eventually outweighs the incapacitation benefit." The Directive instructed deputy district attorneys in pending cases to move to dismiss or withdraw sentence enhancement allegations.

Judge Richard M. Goul presided over the hearing on the motion, which he denied because the court requires "a specific cause or reason regarding this defendant and the circumstances of this defendant in this case. [¶] . . . [¶] . . . [A] generalized motion to dismiss based upon a policy is unlawful and the court may not follow it, so it is denied."

A.    Standard of Review

Denial of a motion to dismiss a sentence enhancement under section 1385 is reviewed for abuse of discretion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 373–374.)  A court abuses its discretion if it is not aware of its discretion to dismiss a sentencing allegation under section 1385 or if the court considered impermissible factors.  (*Id*. at p. 378.)

B.    Applicable Law

In 2018, the Legislature enacted Senate Bill No. 620 (2017–2018 Reg. Sess.), which gives a trial court discretion to dismiss a firearm enhancement in the interest of justice under section 1385.  (Stats. 2017, ch. 682, § 1.)  Section 1385, subdivision (a) provides that a judge may, upon motion of a prosecutor, "and in furtherance of justice" order that an action or an enhancement allegation dismissed.  (§ 1385, sub. (a); *People v. Bonnetta* (2009) 46 Cal.4th 143, 145–146.)

In determining whether to dismiss a firearm enhancement, a court analyzes the same factors considered in imposing a sentence.  (*Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 497 (*Nazir*).)  "These factors include those listed in California Rules of Court, rule 4.410 (general objectives in sentencing), rules 4.421 and 4.423 (circumstances in aggravation and mitigation), and rule 4.428(b) (discretion in striking an enhancement and punishment for an enhancement under § 1385.)"  (*Nazir,* at p. 497.)  These rules refer to circumstances specific to the crime, the defendant's criminal history, and broader social objectives such as deterrence and public safety.  (*Ibid*.)

6

C.  Analysis

In light of *Nazir,* the People concede the trial court erred in not considering the policy considerations set out in the Special Directives.  We agree.  In *Nazir,* Division 7 of this District reversed a trial court's refusal to consider the same Special Directives for the same reason given by the trial court here—that policy considerations do not warrant the exercise of discretion in the absence of individualized characteristics of the offender and the offense.  (*Nazir*, *supra*, 79 Cal.App.5th. at pp. 487–488.)  The *Nazir* Court found the Special Directive's stated goals of deterring crime and reducing recidivism, objectives of the criminal justice system, are proper considerations, along with other factors, in determining whether to impose or dismiss a firearm enhancement.  (*Id*. at pp. 497–498, 502.)

In accordance with *Nazir*, we reverse the order denying the People's motion to dismiss the firearm enhancements and remand the matter to the trial court to consider whether the Special Directives, among other factors, support dismissal of the enhancements in the interest of justice.

II.  **The Enhancements Must be Remanded to Permit the Trial Court to Conduct the Mitigation Review Now Required by Senate Bill No. 81.**

The jury found true 12 firearm enhancements.  The trial court imposed sentence on 10 of the 12 enhancements.  Appellant contends that Senate Bill No. 81 compels the dismissal of all but one of the enhancements where, as here, multiple enhancements are alleged in a single case.  We agree a remand is appropriate, but not for the reasons proffered by appellant.

7

A.      Applicable Law

Senate Bill No. 81 (2021–2022 Reg. Sess.) amended section 1385 to require a court to dismiss enhancements if such dismissal is in the interest of justice.  (Stats. 2021, ch. 721, § 1.)  The court must consider certain enumerated factors when exercising this discretion and must afford great weight to the presence of any mitigating circumstances listed in the statute, unless the court finds that "dismissal of the enhancement would endanger public safety."  (§ 1385, subd. (c)(2).)  The statute applies to sentencings after the effective date of the statute, January 1, 2022.  Appellant's sentencing occurred after January 1, 2022.

The legislation lists one of the mitigating circumstances as "(B) Multiple enhancements are alleged in a single case.  In this instance, all enhancements beyond a single enhancement shall be dismissed."  (§ 1385, subd. (c)(2)(B).)

B.      Analysis

Appellant contends the language in subdivision (c)(2) of section 1385 compels dismissal of all but one enhancement where multiple enhancements are alleged in a single case.  We disagree.  Instead, we agree with and adopt Division Two's analysis in *People v. Walker* (2022) 86 Cal.App.5th 386, review granted March 22, 2023, S278309.  Division Two rejected the idea that all but one enhancement must necessarily be dismissed where multiple enhancements are charged.  Instead, it found that the broad provision is modified, as is consideration of all the mitigating factors, by the condition that dismissal must not " 'endanger public safety.' "  (*Id.* at p. 397.)  Rather than repeat Division Two's thorough analysis, we simply state that we find it persuasive, thoughtful, and apt.

Because the record does not reflect whether the trial court considered the specific factors enumerated in section 1385 and whether dismissing the enhancements would endanger public safety, we reverse the order denying appellant's motion to dismiss and remand the matter for a new hearing.

III. **On This Record, Appellant's Foreign Conviction Does Not Qualify as a Serious Felony.**

In 2021, appellant pleaded guilty to reckless driving causing death in Nevada. The People alleged this prior conviction was a serious felony under section 1192.7, and a "strike" under the Three Strikes Law. The trial court agreed, designated it as a "strike" for sentencing and then declined to consider it for sentencing purposes.

Appellant contends the Nevada offense cannot be considered a strike because conviction does not require that the defendant personally inflict great bodily injury upon a person other than an accomplice, an element required under the Three Strikes Law.

A. <u>Standard of Review</u>

The question of whether appellant's foreign conviction qualifies as a serious felony under section 1192.7, subdivision (c)(8) is a question of law subject to de novo review. (*People v. Lewis* (2021) 11 Cal.5th 952, 961.)

B. <u>Applicable Law</u>

A foreign conviction qualifies as a prior conviction of a serious or violent felony in California if it "includes all of the elements of a particular violent felony as defined in subdivision (c) of section 667.5 or serious felony as defined in subdivision (c)

9

of section 1192.7.  (§ 667, subd. (d)(2).)  Thus, a defendant whose prior conviction was sustained in another jurisdiction is subject to the same punishment as a person previously convicted of an offense involving the same conduct in California.  (*People v. Myers* (1993) 5 Cal.4th 1193, 1201.)

A foreign conviction must include all elements of a serious felony in California.  (*People v. Warner* (2006) 39 Cal.4th 548, 552–553.)  To make that determination, a sentencing court is permitted to identify those facts that were already necessarily found by a prior jury in rendering a guilty verdict or admitted by the defendant in entering a guilty plea.  The court may not rely on its own independent review of record evidence to determine what conduct realistically led to the defendant's conviction.  (*People v. Gallardo* (2017) 4 Cal.5th 120, 124.)  The court may not determine a disputed fact that has not been established by virtue of the conviction itself.  (*Id*. at p. 136.)

In California, gross vehicular manslaughter, a violation of section 192, subdivision (c)(1), corresponds to reckless driving causing death in Nevada.  Gross vehicular manslaughter qualifies as a serious felony if the defendant personally inflicted great bodily injury on a person other than an accomplice.  (*People v. Gonzales* (1994) 29 Cal.App.4th 1684, 1694.)  The Nevada statute to which appellant pleaded guilty requires that the defendant proximately cause death or substantial bodily harm to another person.  (Nev. Rev. Stat. Ann. § 484B.653(9).)  Proximately causing injury does not equate to personally inflicting injury.  (*People v. Rodriguez* (1999) 69 Cal.App.4th 341, 347; *People v. Wilson* (2013) 219 Cal.App.4th 500, 506 [defendant's admission that a person was killed as a proximate result of his conduct did not establish that he personally inflicted

10

injury]; *People v. Valenzuela* (2010) 191 Cal.App.4th 316, 321 [same].)

C.    Analysis

The People agree with appellant that the record does not establish that appellant personally inflicted great bodily injury when he committed the crime of reckless driving causing death. Neither was it proven that the victim was other than an accomplice.  We agree as well.  Although the court did not rely on this prior conviction to impose a sentence under the Three Strikes Law, we vacate the court's finding to ensure that this particular prior conviction is not considered as part of a new sentence unless the People are able to prove up the missing elements at resentencing.  (*People v. Barragan* (2004) 32 Cal.4th 236, 259 [reversal of a true finding on a prior conviction does not bar retrial of the enhancement].)

## IV.    **The Conviction for Possession of a Firearm by a Felon Does Not Violate the Second Amendment.**

Appellant was convicted of violating section 29800, subdivision (a)(1) which prohibits any person who has been convicted of a felony from possessing a firearm.  He contends this conviction violates the Second Amendment to the United States Constitution, which guarantees an individual the presumptive right to possess and carry a firearm for self-defense.  (*New York State Rifle & Pistol Assn v. Bruen* (2022) 597 U.S. ___ [142 S.Ct. 2111, 213 L.Ed. 2d 387].)

We disagree and adopt the analysis of *People v. Alexander* (May 15, 2023, E078846) 91Cal.App.5th 469, 480, which concludes that possession of a firearm by convicted felons is not conduct protected by the Second Amendment.

## V. The Record Supports the Trial Court's Denial of Appellant's *Pitchess* Motion.

Appellant filed a pretrial motion for discovery pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*), asking for information from the personnel records of Officer Kroeger about any accusations against him of misconduct, dishonesty or disciplinary proceedings. The trial court granted the motion for accusations of false reporting and conducted an in-camera hearing with the custodian of records for the City of Long Beach. The court found no allegations of false reports and sealed the records. Appellant asks us to review the sealed records to determine if the trial court abused its discretion in finding no discoverable evidence. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228.) The People do not object.

We have reviewed the transcript of the in-camera hearing and find no discoverable information in Officer Kroeger's personnel file.

**DISPOSITION**

The firearm enhancements are vacated for reconsideration under Senate Bill Nos. 620 and 81.  The finding that the Nevada conviction for reckless driving causing death constitutes a California strike is vacated and remanded for retrial.  The judgment of conviction for possession of a firearm by a felon is affirmed.  The order finding no discoverable evidence of dishonesty under *Pitchess* is affirmed.  In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

GRIMES, J.

VIRAMONTES, J.

13